FILED
United States Court of Appeals
Tenth Circuit

March 18, 2009

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

SUSAN I. MOSS and JAMAL S.
YANAKI,

     Plaintiffs-Appellants,

v.

HEINZ KOPP; KENDRA HERLIN;
AARON D. KENNARD, solely in his
capacity as Sheriff of Salt Lake
County; and SALT LAKE COUNTY,

     Defendants-Appellees.

No. 07-4098

---

**Appeal from the United States District Court for the District of Utah,
Central Division
(D.C. No. 2:06-CV-00317-TC)**

---

Roger H. Hoole (Gregory N. Hoole with him on the briefs), Hoole & King, L.C., Salt
Lake City, Utah, for Plaintiffs-Appellants.

T.J. Tsakalos, Deputy District Attorney, Salt Lake City, Utah, for Defendants-
Appellees.

---

Before **LUCERO**, **HOLLOWAY**, and **EBEL**, Circuit Judges.

---

**HOLLOWAY**, Circuit Judge.

---

Plaintiffs-appellants Jamal Yanaki and Susan Moss brought this 42 U.S.C. § 1983 civil rights action against two Salt Lake County sheriff's deputies, the Salt Lake County Sheriff, and Salt Lake County. Yanaki and Moss allege that the sheriff's deputies participated in an illegal search of Yanaki's residence pursuant to court orders issued in a civil case in which Yanaki was a defendant.

All four defendants moved for dismissal pursuant to Fed. R. Civ. P. 12(b)(6), variously arguing that collateral estoppel applied or, alternatively, they were entitled to quasi-judicial or qualified immunity. The district court held that collateral estoppel did not apply but all the defendants were nevertheless entitled to quasi-judicial immunity, and dismissed the claims against the defendants for failure to state a claim. *Moss v. Kopp*, 505 F. Supp. 2d 1120 (D. Utah 2007). This timely appeal ensued, and we have jurisdiction pursuant to 28 U.S.C. § 1291. The central question before this court is whether the judge below erred in dismissing the § 1983 claims.

## I. BACKGROUND[1]

Several years ago Yanaki was a defendant before a Utah district court in an unrelated civil case filed by a corporation named Iomed. During that action the judge in that case issued two orders, the execution of which by Utah law enforcement

---

[1]These facts are taken from the Amended Complaint of Yanaki and Moss. *See Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) ("In reviewing a [Fed. R. Civ. P. 12(b)(6)] dismissal, a court must accept as true all well-pleaded facts, as distinguished from conclusory allegations, and those facts must be viewed in the light most favorable to the non-moving party.").

forms the basis of the claims in this case.[2]

On Monday, April 15, 2002, Heinz Kopp, a Salt Lake County sheriff's deputy, and a private attorney[3] appeared at the home of Yanaki and Moss with a court order captioned "Order Allowing Immediate Discovery to Prevent the Destruction or Alteration of Evidence" (Discovery Order). The Discovery Order was obtained from Judge Medley, a Utah state district court judge, upon an *ex parte* motion by the plaintiffs in the Utah case, and it directed law enforcement to take custody of various property at Yanaki's home address.[4] Yanaki was not then at his house. After

---

[2]Although neither of the orders were included as an exhibit to the Amended Complaint, these documents were properly considered by the district court and may likewise be considered by this court because they were referred to in the Amended Complaint, are central to the plaintiffs' claims, and their authenticity has not been disputed by any of the parties. *See Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007) (explaining that, notwithstanding the usual rule that a court should consider no evidence beyond the pleadings on a Rule 12(b)(6) motion to dismiss, the district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity).

[3]As noted by the district court, the Amended Complaint does not give the name of the "private attorney." *Moss v. Kopp*, 505 F. Supp. 2d 1120, 1122 n.3 (D. Utah 2007).

[4]The Discovery Order was dated April 12, 2002, and states, in relevant part:

1.     Because of the limited relief sought by this motion and the possibility that evidence may be destroyed or altered upon notice of this action, it is appropriate for the Court to hear and issue this order ex parte.
    . . . .
3.     The Salt Lake County Sheriff's Office . . . is directed, with the assistance of Iomed, to execute this Order at the residence [of

(continued...)

3

reading portions of the order, Moss advised Kopp that Yanaki was not home and that she would not allow them into her house without him being present. The private attorney then stated that "[w]e can come in now, or we can come in later," and Kopp stated that "[w]e can kick in this door." The attorney told Moss that he was going to obtain a further civil order and left, while Kopp remained at the home.

The private attorney returned with another order captioned "Supplemental Order in Aid of Enforcement" (Supplemental Order).[5] Kopp threatened to detain Moss if she interfered, and Moss stepped aside as Kopp and three other individuals

[4](...continued)
Yanaki] and to do the following:

> (a)     take custody of each of the hard drives in one or more computers, of other electronic storage media, including specifically but not limited to ZIP drives and CD ROMS, and of the electronic day planner (a Palm Pilot) in the possession, custody or control of Defendant Jamal Yanaki [at Yanaki's residence];
>
> (b) supervise the copying of information from the [above property] by the computer expert provided by Iomed and to return such copy to Yanaki;
>
> (c) file the original [property] under seal with the Court . . . .

[5]The Supplemental Order was dated April 15, 2002, and in relevant part states:

> In furtherance and enforcement of the [Discovery Order], the Salt Lake County Sheriff's Office is hereby directed and authorized to enter the residence and home address of Defendant Jamal Yanaki . . . and use reasonable force, if necessary and appropriate under the circumstances, to execute the [Discovery Order], including entering through unlocked doors, conducting a search of the premises, and detaining any person who resists enforcement of the [Discovery Order].

4

entered the house. Another sheriff's deputy, Kendra Herlin, later arrived and also threatened to detain Moss if she attempted to interfere. Kopp then took property belonging to Yanaki, Moss, and others to a private citizen's place of business.

After the search, Yanaki and Moss filed a civil rights suit under 42 U.S.C. § 1983 against Iomed (the plaintiff in the underlying Utah state case) and several private citizens, alleging that the search of their residence violated their rights under the United States Constitution. *See Yanaki v. Iomed*, 415 F.3d 1204, 1205 (10th Cir. 2005), *cert. denied*, 547 U.S. 1111 (2006). This court affirmed the district court's grant of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) because we held that "[t]he involvement of the police in executing the court-ordered search, without more, does not convert [the private defendants'] abuse of state law into conduct attributable to the state for purposes of § 1983 liability," and "[b]ecause [Yanaki and Moss] allege nothing more than 'private misuse' of state laws, their complaint [therefore] fails to satisfy the first part of the color of law test." *Id.* at 1209–10.

After losing that appeal, Yanaki and Moss filed this § 1983 civil rights action in the federal district court for the District of Utah against the sheriff's deputies, Kopp and Herlin, the Salt Lake County Sheriff, Aaron Kennard, and Salt Lake County itself. The defendants each moved for dismissal, variously arguing that: (1) the suit is barred by collateral estoppel, (2) the deputies involved in the alleged search and seizure are protected by quasi-judicial immunity, and (3) the deputies' conduct is protected by qualified immunity. The district court determined that

5

collateral estoppel was not applicable, but further held that the defendants were entitled to dismissal on quasi-judicial immunity grounds. Yanaki and Moss appealed, and we now address the district court's dismissal.

## II. STANDARD OF REVIEW

We review a dismissal under Fed. R. Civ. P. 12(b)(6) *de novo*. *Schneider*, 493 F.3d at 1177. In reviewing a dismissal, we must accept as true all well-pleaded facts, as distinguished from conclusory allegations, and those facts must be viewed in the light most favorable to the non-moving party. *Shero*, 510 F.3d at 1200. Our inquiry is whether the complaint contains enough facts to state a claim for relief that is plausible on its face. *Schneider*, 493 F.3d at 1177. "Thus, the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Id.*

## III. DISCUSSION

### A. Collateral Estoppel/Issue Preclusion

The first issue in this appeal is whether the defendants–appellees are entitled to an affirmance of the complaint's dismissal on the basis of collateral estoppel.[6]

_____

[6]Yanaki and Moss assert that because the appellees did not file a notice of appeal with regard to the collateral estoppel issue the appellees have now waived the opportunity to have this issue resolved by this court. However, the appellees, who prevailed below, need not file a cross-appeal to defend the district court's

(continued...)

6

Collateral estoppel, or issue preclusion,[7] is designed to prevent needless relitigation and bring about some finality to litigation. *United States v. Botefuhr*, 309 F.3d 1263, 1282 (10th Cir. 2002). Collateral estoppel bars a party from relitigating an issue once it has suffered an adverse determination on the issue, even if the issue arises when the party is pursuing or defending against a different claim. *Park Lake Res. Ltd. Liab. Co. v. USDA*, 378 F.3d 1132, 1136 (10th Cir. 2004).

Collateral estoppel will bar a claim if four elements are met: (1) the issue previously decided is identical with the one presented in the action in question, (2) the prior action has been finally adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party or in privity with a party to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action. *Frandsen v. Westinghouse Corp.*,

---

[6](...continued)
granting of their motions to dismiss, which included the appellees' collateral estoppel argument. *See Washington v. Confederated Bands & Tribes of the Yakima Indian Nation*, 439 U.S. 463, 476 n.20 (1979) ("As the prevailing party, the appellee was of course free to defend its judgment on any ground properly raised below whether or not that ground was relied upon, rejected, or even considered by the District Court or the Court of Appeals."); *United States v. Am. Ry. Express Co.*, 265 U.S. 425, 435 (1924) ("But it is likewise settled that the appellee may, without taking a cross-appeal, urge in support of a decree any matter appearing in the record, although his argument may involve an attack upon the reasoning of the lower court or an insistence upon a matter overlooked or ignored by it.").

[7]The terms "collateral estoppel" and "issue preclusion" are used interchangeably. Murdock v. UTE Indian Tribe of Uintah & Ouray Reservation, 975 F.2d 683, 686 n.4 (10th Cir. 1992).

46 F.3d 975, 978 (10th Cir. 1995).[8] The only element that is reasonably in question is the first element–whether the issue decided in *Yanaki* is identical with the one presented in the action in question.

In *Yanaki*, Yanaki and Moss sued various private parties (not the state defendants in this case) under § 1983. 415 F.3d at 1205. As the Supreme Court has

[8]Elements two, three, and four are established in this case. First, *Yanaki* was finally adjudicated on the merits because this court decided the case on appeal and our decision to affirm the dismissal was dependent on the fact that Yanaki and Moss did not satisfy the color of law test against the *Yanaki* private defendants. *See Yanaki*, 415 F.3d at 1210 ("Plaintiffs fail to satisfy the first part of the color of law test because the conduct that Plaintiffs complain deprived them of their constitutional rights was caused by and can only be attributed to the private Defendants."); *Murdock*, 975 F.2d at 687 ("To be considered adjudicated on the merits, the previous adjudication must be necessary to the judgment.").

Second, Yanaki and Moss were the plaintiffs in *Yanaki* and are the parties against whom the doctrine is invoked here. *See Frandsen*, 46 F.3d at 978 (explaining that collateral estoppel requires the party against whom the doctrine is invoked to be a party or in privity with a party to the prior adjudication).

Finally, the only argument made by the appellants that a full and fair opportunity was not available is that "one cannot assert a theory of liability against a party that does not exist." To the extent that the appellants mean to argue that they did not have a "full and fair opportunity" solely because the defendants in this case were not defendants in *Yanaki*, the argument is without merit, as collateral estoppel merely requires that the party *against* whom the doctrine is invoked be a party in the prior case. *See id.* at 978.

Neither are any of the other factors that we use to determine if a full and fair opportunity was present applicable. *See Burrell v. Armijo*, 456 F.3d 1159, 1172 (10th Cir. 2006), *cert. denied*, 127 S. Ct. 1132 (2007) (explaining that whether there were significant procedural limitations in the prior proceeding, whether the party had the incentive to litigate the issue fully, and whether effective litigation was limited by the nature or relationship of the parties are relevant factors for the full and fair opportunity element). Therefore this element is established. *See Frandsen*, 46 F.3d at 979 (holding that there was no question that the full and fair opportunity element was met where there was no indication that such an opportunity was unavailable).

explained, § 1983 "provides that '[every] person' who acts 'under color of' state law to deprive another of constitutional rights shall be liable in a suit for damages." *Tower v. Glover*, 467 U.S. 914, 919 (1984) (quoting 42 U.S.C. § 1983). As this statement makes clear, the party from whom damages are sought must have acted under color of state law. Therefore, the relevant inquiry in *Yanaki* was whether the *private defendants* (the only parties sued) acted under color of law.

We affirmed the dismissal of the complaint because we found that the plaintiffs had failed to allege sufficiently that the private defendants had acted under color of state law because the conduct of the private defendants in obtaining the relevant court orders could not be attributed to the state so as to satisfy the first part of the under-color-of-law test. *See Yanaki*, 415 F.3d at 1209–10 (holding that "[t]he involvement of the police in executing the court-ordered search, without more, does not convert [the private defendants'] abuse of state law into conduct attributable to the state for purposes of § 1983 liability," and "[b]ecause [Yanaki and Moss] allege nothing more than 'private misuse' of state laws, their compliant fails to satisfy the first part of the color of law test"); *see also id.* at 1211 (Holloway, J., dissenting) ("I disagree with the Majority's conclusion that Plaintiffs failed to sufficiently allege concerted action between the private Defendants and the police in order to support a finding that the Defendants were acting 'under color of state law.'"); *Yanaki v. Iomed, Inc.*, 319 F. Supp. 2d 1261, 1265 (D. Utah 2004) ("Plaintiffs allege that [the private] Defendants' use of state discovery rules to obtain an order from a state court

9

judge permitting the search of their home and the seizure of Yanaki's property satisfies the first part of the test for fair attribution [to the state for purposes of satisfying the requirement that the deprivation occur under color of state law].").

The question here, however, is whether under the same facts the associated *state officials* (defendants in this case) acted under color of law *by their own conduct*, not whether the private parties acted under color of law by having their conduct in obtaining the orders attributed to the state officials. In sum, we are convinced that the issue in *Yanaki* is sufficiently different from the issue that is raised in the instant suit so as to preclude the application of collateral estoppel here.

## B. Quasi-judicial Immunity

The second issue in this appeal is whether the two sheriff's deputies that executed the disputed court orders are entitled to quasi-judicial immunity. We have held that "[j]ust as judges acting in their judicial capacity are absolutely immune from liability under section 1983, 'official[s] charged with the duty of executing a facially valid court order enjoy[] absolute immunity from liability for damages in a suit challenging conduct prescribed by that order.'" *Turney v. O'Toole*, 898 F.2d 1470, 1472 (10th Cir. 1990) (quoting *Valdez v. City & County of Denver*, 878 F.2d 1285, 1286 (10th Cir. 1989)).[9] Absolute immunity for officials assigned to carry out a judge's orders is necessary to ensure that such officials can perform their function

---

[9]The "absolute immunity" available to individuals executing a court order is also sometimes alternatively referred to as "quasi-judicial immunity." *See Turney*, 898 F.2d at 1472.

10

without the need to secure permanent legal counsel. *Guttman v. G.T.S. Khalsa*, 446 F.3d 1027, 1033 (10th Cir. 2006); *Valdez*, 878 F.2d at 1288.

However, we have never held that "'the unquestioning execution of a judicial directive may never provide a basis for liability against a state officer.'" *See Turney*, 898 F.2d at 1474 (quoting *Sebastian v. United States*, 531 F.2d 900, 903 n.6 (8th Cir. 1976)). Rather, there are limits to how unlawful an order can be and still immunize the officer executing it. *Id.* at 1474. Therefore, we have held that for the defendant state official to be entitled to quasi-judicial immunity, the judge issuing the disputed order must be immune from liability in his or her own right, the officials executing the order must act within the scope of their own jurisdiction, and the officials must only act as prescribed by the order in question.[10] *Id.* at 1472, 1474.

### 1. Judge Medley's Immunity from Liability

We have explained that because quasi-judicial immunity derives from judicial immunity, for quasi-judicial immunity to apply, the order must be one for which the issuing judge is immune from liability, and therefore a state official is not absolutely immune from damages arising from the execution of an order issued by a judge acting in the "'clear absence of all jurisdiction.'" *Turney*, 898 F.2d at 1474 (quoting

---

[10]We have also indicated that where the defendants themselves, in bad faith, obtain the order under which they claim immunity, that order will not provide the same quasi-judicial immunity as an order which the defendant played no part in procuring. *Turney*, 898 F.2d at 1473 n.3. However, it is undisputed that here the defendants–appellees did not themselves obtain the order, but merely obeyed it. They are therefore entitled to the normal degree of quasi-judicial immunity.

11

*Stump v. Sparkman*, 435 U.S. 349, 357 (1978)). But a judge does not act in the clear absence of all jurisdiction even if the action he took was in error, was done maliciously, or was in excess of his authority. *Whitesel v. Sengenberger*, 222 F.3d 861, 867 (10th Cir. 2000). A judge is immune from liability for his judicial acts even if his exercise of authority is flawed by the commission of "'grave procedural errors.'" *Id.* (quoting *Stump*, 435 U.S. at 359).

The Supreme Court has explained that "the scope of the judge's jurisdiction must be construed broadly where the issue is the immunity of the judge," and "the necessary inquiry in determining whether a defendant judge is immune from suit is whether at the time he took the challenged action he had jurisdiction over the subject matter before him." *Stump*, 435 U.S. at 356.

We believe that the Supreme Court's decision in *Stump v. Sparkman* is particularly cogent here. In *Stump*, the Court held that the Indiana circuit court judge in that case did not act in the clear absence of all jurisdiction when he approved a petition to sterilize a minor who later sued under § 1983 claiming that the sterilization violated her constitutional rights. 435 U.S. at 351–53, 357. The Court noted that it was significant that there was no Indiana statute and no case law prohibiting a circuit court–a court of general jurisdiction–from considering a petition of the type presented to the judge. *Id.* at 358. In addition, the Court explained that even though under a relevant Indiana case a circuit judge would err as a matter of law if he were to *approve* a parent's petition seeking the sterilization of a child, the

12

case did not indicate that a circuit judge was without *jurisdiction* to entertain the petition. *Id.* at 359. The Court explained that because the court over which the judge presided was one of general jurisdiction, neither the procedural errors he may have committed nor the lack of a specific statute authorizing his approval of the petition in question rendered him liable in damages for the consequences of his actions. *Id.* at 359–60. The Court further reasoned that the court of appeals' statement that the action taken by the judge was "'an illegitimate exercise of his common law power because of his failure to comply with . . . procedural due process'" misconceived the doctrine of judicial immunity, as a judge is immune from liability for his judicial acts even if his exercise of authority is flawed by the commission of grave procedural errors. *Id.* at 360 (quoting *Sparkman v. McFarlin*, 552 F.2d 172, 176 (7th Cir. 1977)).

Similarly, the Utah district court here is the court of general jurisdiction. *See* UTAH CODE ANN. § 78A-5-102(1) (2008) ("The district court has original jurisdiction in all matters civil and criminal, not excepted in the Utah Constitution and not prohibited by law."). Even if Judge Medley's *approval* of the motions that lead to the two challenged court orders was error, even grave procedural due process error, there is no indication under Utah law that Judge Medley was without *subject matter jurisdiction* to entertain the motions. And since he was a judge of a court of general jurisdiction, neither Judge Medley's commission of error in granting the motions that led to the two disputed orders, nor the apparent lack of a statute authorizing Judge

13

Medley's approval of the motions leading to the orders, rendered his actions in "clear absence of all jurisdiction." Therefore, the district court here was correct to find this aspect of the quasi-judicial immunity analysis satisfied.

## 2. The Court Orders' Facial Validity

A key requirement that we have found necessary to the application of quasi-judicial immunity where government officials are executing court orders is the requirement that the order be "facially valid." *See Turney*, 898 F.2d at 1472 (holding that officials charged with the duty of executing a facially valid court order enjoy absolute immunity). However, we have acknowledged that even assuming that an order is infirm as a matter of state law, it may be facially valid, as "facially valid" does not mean "lawful," and erroneous orders can be valid. *Id.* at 1473. We explained: "State officials 'must not be required to act as pseudo-appellate courts scrutinizing the orders of judges,' but subjecting them to liability for executing an order because the order did not measure up to statutory standards would have just that effect." *Id.* (quoting *Valdez*, 878 F.2d at 1289). Further, "[t]o allow plaintiffs to bring suit any time a state agent executes a judicial order which does not fulfill every legal requirement would make the agent 'a lightning rod for harassing litigation aimed at judicial orders.'" *Id.* (quoting *Valdez*, 878 F.2d at 1289). "Simple fairness requires that state officers 'not be called upon to answer for the legality of decisions which they are powerless to control.'" *Id.* (quoting *Valdez*, 878 F.2d at 1289).

14

We have also noted that a narrow conception of facial validity would deprive the court of most of the benefit it derives from the existence of quasi-judicial immunity for officers carrying out its orders because the unhesitating execution of court orders is essential to the court's authority and ability to function, and state officers subject to litigation might neglect to execute these orders. *Turney*, 898 F.2d at 1473. Even worse, "'a fear of bringing down litigation on the [officer executing the order] might color a court's judgment in some cases.'" *Id.* (quoting *Kermit Constr. Corp. v. Banco Credito y Ahorro Ponceno*, 547 F.2d 1, 3 (1st Cir. 1976)). In short, "'[t]he public interest demands strict adherence to judicial decrees.'" *Id.* at 1473–74 (quoting *Valdez*, 878 F.2d at 1289).

Turning to the particulars of the case before us, a Utah sheriff's deputy is required to "obey [a court's] lawful orders and directions" and "serve all process and notices as prescribed by law." UTAH CODE ANN. § 17-22-2(1)(c), (k) (2008). "Process" is defined to include "all writs, warrants, summonses and orders of the courts of justice or judicial officers." *Id.* § 17-22-1. Further, Kopp and Herlin may have faced contempt if they had refused to execute the orders at issue in this case. *See id.* § 78B-6-301(3), (5) ("The following acts or omissions in respect to a court or its proceedings are contempts of the authority of the court: . . . (3) misbehavior in office, or other willful neglect or violation of duty by [a] sheriff, or other person appointed or elected to perform a judicial or ministerial service; . . . (5) disobedience of any lawful judgment, order or process of the court . . . ."). A court order may be

15

unlawful or erroneous and yet still facially valid, and holding that the orders in this case are facially valid, even if they were unlawful or erroneous, furthers the goals this court sought to achieve by extending quasi-judicial immunity to officials charged with executing court orders. If we were to hold these orders to be facially invalid, state officials would be required to "'act as pseudo-appellate courts scrutinizing the orders of judges,'" which state officials such as these must not be required to do. *See Turney*, 898 F.2d at 1473 (quoting *Valdez*, 878 F.2d at 1289).

Or worse, the officials may have to secure legal counsel to help them fulfil that function–a result this court sought to avoid by extending quasi-judicial immunity to this situation in the first place. *See Valdez*, 878 F.2d at 1288 (observing that absolute immunity for officials assigned to carry out a judge's orders is necessary to ensure that such officials can perform their function without the need to secure permanent legal counsel). Having to act as "pseudo-appellate courts," and requiring legal counsel to help them do so, is especially likely here, where there is a statute directing the nonlawyer state official to execute judicial orders lest he or she be held in contempt, and where nonlawyer sheriff's deputies may already be accustomed to receiving *ex parte* noncriminal orders to seize property. *See* Utah R. Civ. P. 64, 64B (providing that a writ of replevin is available to compel delivery of property, that "the writ may direct the officer to seize the property," and describing procedures when the writ is issued *ex parte*).

Further, we have deplored a "narrow conception" of facial validity, as it would

16

deprive the courts of most of the benefit they derive from the existence of quasi-judicial immunity. *Turney*, 898 F.2d at 1473. This is especially likely here: if the orders here were held facially invalid even though statutory law directs the officials to execute such orders, thereby subjecting the deputies to potential liability, these deputies and others like them may be much more reluctant to execute future orders of the judiciary. *See id.* (explaining that state officers without quasi-judicial immunity and subject to litigation might neglect to execute judicial orders). That is unacceptable. "'The public interest demands strict adherence to judicial decrees.'" *Id.* (quoting *Valdez*, 878 F.2d at 1289).

Finally, as previously noted, a court order can be unlawful and yet still be facially valid for purposes of quasi-judicial immunity. *Turney*, 898 F.2d at 1473. Even if the court orders here are unlawful, several considerations demonstrate that the orders did not reach the level of illegality necessary to render them *facially* invalid for purposes of quasi-judicial immunity and to justify imposing liability on the deputies: (1) Utah sheriff's deputies–who do not have the benefit of a formal legal education–are otherwise subject to being authorized to seize property in noncriminal actions through writs of replevin; (2) we are pointed to no law totally forbidding entry into a dwelling when executing a writ of replevin;[11] and (3) an order

---

[11]Other states appear to authorize entry into a dwelling for purposes of executing a writ of replevin. *See, e.g., Consol. Edison Co. of New York, Inc. v. Church of St. Cecilia*, 480 N.Y.S.2d 284, 286 (N.Y. Civ. Ct. 1984) (explaining that an order of seizure, formerly called an order of replevin, seeks a direction to
(continued...)

17

in a civil case that authorizes entry into a residence but does not meet warrant requirements is not as clearly unlawful as a similar order in a criminal case, where law enforcement officers are familiar with the requirements for legally obtaining evidence. Therefore, we conclude that the court orders in this case meet the facial validity requirement.[12]

### 3. Actions Within the Scope of Jurisdiction

Quasi-judicial immunity will not attach to state officials acting outside the scope of their jurisdiction. *Turney*, 898 F.2d at 1474. However, as explained above,

---

[11](...continued)
the sheriff to seize a chattel and, if necessary, to break into any place it is kept); *Durgin v. Cohen*, 168 Minn. 77, 80 (Minn. 1926) (observing that court officers had a right to take possession of property described in replevin papers, and also had the right to enter the plaintiff's place of abode for that purpose, provided they could enter peaceably).

[12]Plaintiffs–appellants' reliance on *Groh v. Ramirez* is misplaced. That case is distinguishable from the case before this court, and in any case, if it applies, it only supports the application of quasi-judicial immunity here. First, the defendants in that case raised only the defense of qualified immunity, not quasi-judicial immunity, and therefore the Supreme Court did not have any question of the applicability or scope of quasi-judicial immunity before it. *Groh v. Ramirez*, 540 U.S. 551, 555–56 (2004). Also, that case involved a criminal search warrant, not civil court orders aimed at preventing evidence manipulation. *Id.* at 554.

       Further, although the *Groh* Court found the criminal *warrant* in that case to be facially invalid, it did so because the warrant failed to describe with particularity the things to be seized "*at all*." *Id.* at 557–58. However, the Discovery Order at issue here described with particularity the things to be seized, i.e., "hard drives in one or more computers, of other electronic storage media, including specifically but not limited to ZIP drives and CD ROMS, and of the electronic day planner (Palm Pilot) in the possession, custody or control of Defendant Jamal Yanaki."

Utah statutory law directs sheriff's deputies such as Kopp and Herlin to execute judicial orders. UTAH CODE ANN. §§ 17-22-1, -2(1)(c), (k) (directing a Utah sheriff's deputy to "obey [a court's] lawful orders and directions" and "serve all process and notices as prescribed by law," and defining "process" to include "all writs, warrants, summonses and orders of the courts of justice or judicial officers").

Further, Kopp and Herlin may have faced contempt if they had refused to execute the orders at issue in this case. *See id.* § 78B-6-301(3), (5) ("The following acts or omissions in respect to a court or its proceedings are contempts of the authority of the court: . . . (3) misbehavior in office, or other willful neglect or violation of duty by [a] sheriff, or other person appointed or elected to perform a judicial or ministerial service; . . . (5) disobedience of any lawful judgment, order or process of the court . . . ."). Here Kopp and Herlin obeyed the statute and executed Judge Medley's orders. From the facts presented, it cannot be said that they acted outside the scope of their jurisdiction.

#### 4. Acts Prescribed by the Orders

Importantly, quasi-judicial immunity extends only to acts prescribed by the judge's order. *Turney*, 898 F.2d at 1474. Therefore, absolute immunity does not protect defendants from damage claims directed not to the conduct prescribed by the court order itself, but to the manner of the order's execution. *Martin v. Board of County Comm'rs*, 909 F.2d 402, 403–05 (10th Cir. 1990). In *Valdez v. City and County of Denver*, this court explained that because the record *viewed as a whole*

indicated that every action of the law enforcement officers to which the plaintiff objected was taken under the direction of a state court judge, the law enforcement officers qualified for quasi-judicial immunity. 878 F.2d at 1290.

However, in *Turney v. O'Toole*, we held that because the judge's order only decreed the plaintiff's confinement and did not dictate any specific placement or treatment within the hospital in which the plaintiff was to be confined, the defendants were not absolutely immune from liability arising from the 17-year-old plaintiff's placement in a maximum security ward. 898 F.2d at 1472, 1474.

Here, Yanaki and Moss argue that the deputies exceeded Judge Medley's orders because (1) Kopp threatened to "kick in" Yanaki's door, (2) Kopp and Herlin threatened to detain Moss if she interfered, and (3) the deputies obtained property that did not belong to Yanaki.

First, even though the court orders did not specifically authorize Kopp to threaten to "kick in" Yanaki's door, this single statement by Kopp is significantly different from the conduct we have held exceeds a judicial order for the purpose of this element of the quasi-judicial immunity analysis. In *Turney*, we held that the defendants exceeded the judge's order when they were directed to merely confine the plaintiff at a hospital, and instead placed the plaintiff in a maximum security ward. 898 F.2d at 1472, 1474. Incorrectly placing someone in a maximum security ward when only directed to confine the person in a hospital appears excessive. However, the single statement by Kopp in this case (which did not even immediately prompt

20

Moss to allow Kopp to enter Yanaki's home, as she did not permit Kopp to enter until after the private attorney returned with the supplemental order), made while Kopp was directed to obtain property from Yanaki's residence, cannot be said to be similarly excessive for purposes of quasi-judicial immunity.

Second, the threats made by Kopp and Herlin to detain Moss if she interfered were made *after* the private attorney returned to Yanaki's residence with the Supplemental Order, which specifically authorized the deputies to "detain[] any person who resists enforcement of the [Discovery Order]." Therefore, the deputies were merely making Moss aware of what the Supplemental Order authorized, and it was prudent to do so.

Finally, Kopp and Herlin did not exceed the court orders even if they inadvertently obtained property that was not "owned" by Yanaki, because the Discovery Order specifically directed the Salt Lake County Sheriff's Office to take custody of property "in the possession, custody, or control" of Yanaki–not merely property "owned" by Yanaki. Yanaki and Moss allege that Kopp and Herlin obtained the property from Yanaki's home, but they do not allege any facts indicating that even though the property obtained was in Yanaki's home, it was still not in his "possession, custody, or control." Further, Yanaki and Moss do not allege that property not meeting the description of the property in the Discovery Order was taken by the deputies. Under these facts, Kopp and Herlin did not exceed either the Discovery Order or the Supplemental Order.

21

## C. Claims Against the Sheriff and Salt Lake County

The final issue we must address is whether Yanaki and Moss have sufficiently alleged § 1983 claims against Kennard (the sheriff of Salt Lake County who is being sued solely in his official capacity),[13] and Salt Lake County.

Municipal entities and local governing bodies are not entitled to the traditional common law immunities for § 1983 claims. *Whitesel*, 222 F.3d at 870. That is, unlike various government officials, municipalities (*e.g.*, local officials in their official capacity and counties, among others) do not enjoy absolute immunity from suit under § 1983. *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 165–66 (1993).

To establish a claim for damages under § 1983 against municipal entities or local government bodies, the plaintiff must prove (1) the entity executed a policy or custom (2) that caused the plaintiff to suffer deprivation of constitutional or other federal rights. *Whitesel*, 222 F.3d at 870. That is, "'a municipality cannot be held liable under § 1983 on a *respondeat superior* theory.'" *Leatherman*, 507 U.S. at 166 (quoting *Monell*, 436 U.S. at 691).

More specifically, we have recognized that a municipality can be liable under

---

[13]The Supreme Court has determined that an official-capacity suit brought under § 1983 "'generally represent[s] only another way of pleading an action against an entity of which an officer is an agent,'" and as long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. *Kentucky v. Graham*, 473 U.S. 159, 161, 165–66 (1985) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978)).

22

§ 1983 if the "final policymaker" takes the unconstitutional action. *Melton v. City of Oklahoma City*, 879 F.2d 706, 724 (10th Cir. 1989), *rev'd en banc in part on other grounds*, 928 F.2d 920 (10th Cir. 1991). We have also acknowledged two situations where municipal liability may be found even though the action is taken by an individual other than the final policymaker. *Id.* First, "'egregious attempts by local government to insulate themselves from liability for unconstitutional policies' will be precluded if the plaintiff establishes 'the existence of a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law.'" *Id.* (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)). In addition, if a subordinate's position is subject to review by the municipality's authorized policymakers and the authorized policymakers approve a subordinate's decision and the basis for it, their ratification will be chargeable to the municipality. *Id.*

We have also further clarified that proof of a single incident of unconstitutional activity is ordinarily not sufficient to impose municipal liability, and where a plaintiff seeks to impose municipal liability on the basis of a single incident, the plaintiff must show the particular illegal course of action was taken pursuant to a decision made by a person with authority to make policy decisions on behalf of the entity being sued. *Jenkins v. Wood*, 81 F.3d 988, 994 (10th Cir. 1996).

In their complaint Yanaki and Moss allege that a policy of Kennard that has deprived them of their constitutional rights is shown "by the fact that two Salt Lake

County Sheriff's Deputies, one of whom is a Sergeant, were willing to assist in the illegal actions to deprive Moss and Yanaki of their rights." However, assuming Kennard is the "final policymaker" for § 1983 purposes, they fail to allege any conduct by Kennard or by Salt Lake County officials apart from the conduct of Kopp and Herlin. *See Melton*, 879 F.2d at 724 (recognizing that a municipality may be liable under § 1983 if the final policymaker takes the unconstitutional action or when a "widespread practice" exists).[14] Neither do they allege that Kennard approved the underlying search that forms the basis of their § 1983 claim. *See id.* (charging the policymakers' approval of the unconstitutional activity of a subordinate to the municipality).

Further, Yanaki and Moss are alleging that Kennard and Salt Lake County should be liable on the basis of this single incident, but do not allege the incident occurred pursuant to a decision made by Kennard. *See Jenkins*, 81 F.3d at 994 (explaining that where a plaintiff seeks to impose municipal liability on the basis of a single incident the plaintiff must show the particular illegal course of action was taken pursuant to a decision made by a person with authority to make policy decisions on behalf of the entity being sued).

As Yanaki and Moss rely entirely on the conduct of the deputies alone, they can only be alleging *respondeat superior* liability for Kennard and Salt Lake County,

---

[14]In fact, at oral argument Yanaki and Moss conceded that they had no evidence of a pattern or practice other than the case at bar.

24

which the Supreme Court has ruled cannot support § 1983 liability against municipalities. *Leatherman*, 507 U.S. at 166 (observing that a municipality cannot be held liable under § 1983 on a *respondeat superior* theory). Therefore, the district court properly dismissed the claims against Kennard and Salt Lake County.

## IV.

Because we have found that the appellees are entitled to dismissal on grounds other than qualified immunity, we need not determine if the appellees would be entitled to dismissal based on qualified immunity under the facts alleged. Because the sheriff's deputies were entitled to quasi-judicial immunity, and appellants did not state a claim against either the Sheriff of Salt Lake County or Salt Lake County itself, the district court did not err by granting the appellees' motions to dismiss. Its decision is therefore

**AFFIRMED.**