**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 14, 2012**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

JAMES WILCOX; KELLY WILCOX; WILCOX LIVESTOCK, LLC.; JESSE WILCOX,

      Plaintiffs-Appellants,

v.

ANDREW MAGILL, Deputy, in his individual capacity; MARK HARTMAN, Deputy, in his individual capacity; DAN HADDEN, Brand Inspector, in his individual capacity; PARK COUNTY SHERIFF, in his official capacity, a/k/a Scott Steward; PARK COUNTY SHERIFF'S OFFICE; SCOTT STEWARD, individually; PARK COUNTY,

      Defendants-Appellees.

and

RHONDA ROBINSON, citizen and resident of South Carolina,

      Defendant.

No. 11-8021
(D.C. No. 1:10-CV-00210-ABJ)
(D. Wyo.)

---

**ORDER AND JUDGMENT**[*]

---

[*]    After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and

(continued...)

Before **KELLY**, **MURPHY**, and **HOLMES**, Circuit Judges.

This civil rights action brought under 42 U.S.C. § 1983 seeks to impose liability on state officials for acting on a writ of execution that was later modified by the issuing court. The district court granted defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), and exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

I

Jim and Kelly Wilcox operated a horse ranch in Wyoming, doing business under various names, including "Wilcox Livestock, LLC." In 2007, Mr. Wilcox contracted with a former client, Rhonda Robinson, to purchase eleven horses. The deal called for Ms. Robinson to finance part of the purchase price in return for a profit after the horses were sold. When the deal fell through, Ms. Robinson sued in state court, naming as defendants "Jim & Kelly Wilcox, d/b/a Wyoming Ranch Geldings d/b/a/ Wilcox Livestock, LLC," Aplt. App. at 28.

The Wilcoxes failed to answer the complaint, and on April 9, 2008, the court entered a default judgment "jointly and severally against Jim Wilcox, Wyoming Ranch Geldings, and Wilcox Livestock, LLC." *Id.* at 34. The court

*(...continued)
collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

later issued a writ of execution, commanding the Park County Sheriff to satisfy the judgment by seizing non-exempt goods and chattels belonging to "Jim Wilcox, d/b/a Wyoming Ranch Geldings, d/b/a Wilcox Livestock, LLC." *Id.* at 36. Thus, on July 16, 2008, Sheriff Deputies Magill and Hartman, along with Brand Inspector Hadden, executed the writ by seizing eleven horses from the Wilcox ranch. The horses were immediately transported to Ms. Robinson's property in South Carolina.

Before the horses were seized, however, there had been competing claims of ownership made by the Wilcoxes, Ms. Robinson, and the Bank of Wyoming ("bank"). The bank had asserted lien priority over some sixty horses, so after the officials executed the writ, the bank moved to stay the execution sale. Also, Mr. Wilcox moved for relief from judgment. Hence, the state court held a hearing, granted the bank's motion for stay, and scheduled another hearing for August 14, 2008, to resolve the competing ownership claims and Mr. Wilcox's motion for relief from judgment. But the day before that hearing, the state court proceedings were halted for nearly a year, and when they resumed, the state court determined after yet another hearing that it had erred in entering default judgment against Wilcox Livestock. The court ruled that Wilcox Livestock had not been a party to the case and any horses owned by that entity or anyone except Mr. Wilcox were not subject to execution and had to be returned to their rightful owners. To that end, the court entered a second judgment nunc pro tunc the date

-3-

of the original order solely against Mr. Wilcox. Ultimately, all but one of the mistakenly seized horses were returned to their owners; the rest were sold at a sheriff's sale in partial satisfaction of the judgment.

Seemingly vindicated by the state court's amended judgment, the Wilcoxes, Jesse Wilcox (their child), and Wilcox Livestock brought this action in the district court, alleging that defendants wrongfully seized their horses in executing the writ against Mr. Wilcox. Plaintiffs claimed that defendants conspired to violate their due process rights by seizing the horses in accordance with municipal policy, practice, or custom. Plaintiffs pleaded a number of state-law claims as well.

The district court entered a Fed. R. Civ. P. 54(b) certification to permit this appeal despite a still-pending claim against Ms. Robinson. And in a forty-seven page order, the district court dismissed the federal claims against all other defendants under Fed. R. Civ. P. 12(b)(6), declining to exercise supplemental jurisdiction over the pendant state-law claims. The court concluded that plaintiffs failed to plead a Fourth or Fourteenth Amendment violation and defendants were entitled to immunity. The district court subsequently denied reconsideration, and plaintiffs appealed.

## II

We review the district court's dismissal under Rule 12(b)(6) de novo. *Moss v. Kopp*, 559 F.3d 1155, 1161 (10th Cir. 2009) . "[W]e accept as true all

-4-

well-pleaded factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff." *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009).  To survive a motion to dismiss for failure to state a claim, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Id.* (internal quotation marks omitted).  "In evaluating a Rule 12(b)(6) motion to dismiss, courts may consider not only the complaint itself, but also attached exhibits, and documents incorporated into the complaint by reference." *Id.* (citations omitted).

Plaintiffs' contentions are premised on the assumption that defendants exceeded the scope of the *modified* state court order.  But the officers did not act pursuant to that order; rather, the officers seized the horses pursuant to the original writ of execution, which was valid on its face.  "[O]fficials charged with the duty of executing a facially valid court order enjoy absolute immunity from liability for damages in a suit challenging conduct prescribed by that order." *Moss*, 559 F.3d at 1163 (internal quotation marks omitted).  This quasi-judicial immunity protects officials from being "called upon to answer for the legality of decisions which they are powerless to control." *Valdez v. City and Cnty. of Denver*, 878 F.2d 1285, 1289 (10th Cir. 1989).  The officials here were legally required to levy the writ of execution. *See* Wyo. Stat. Ann. §§ 1-17-308, 1-17-310.  The writ ordered them to satisfy Ms. Robinson's judgment by seizing property belonging to "Jim Wilcox, d/b/a Wyoming Ranch Geldings, d/b/a Wilcox

Livestock, LLC." Aplt. App. at 36. Because the officers seized the horses at the Wilcox ranch pursuant to a facially valid writ of execution, they are absolutely immune from suit. It follows, then, that to the extent the officials are shielded by absolute quasi-judicial immunity, plaintiffs' conspiracy claim must fail. *See Elder v. Athens-Clarke Cnty.*, 54 F.3d 694, 695 (11th Cir. 1995) ("[T]he allegation that a challenged official act is part of a conspiracy does not in any manner dilute immunity."); *Ashelman v. Pope*, 793 F.2d 1072, 1078 (9th Cir. 1986) (en banc) (holding that conspiracy between a judge and prosecutor did not pierce immunity).

However, to the extent that Kelly and Jesse Wilcox assert that defendants exceeded the scope of the writ by shipping the horses to South Carolina, we agree that absolute immunity does not apply because nothing in the writ authorized the officials to transfer possession of the horses to Ms. Robinson.[1] *See Moss*, 559 F.3d at 1167 ("[Q]uasi-judicial immunity extends only to acts prescribed by the judge's order."). Although the officials correctly point out that Wyoming law allows for a private sale, *see* Wyo. Stat. Ann. § 1-17-314, they were still required to retain possession---actual or constructive---until a court authorized such a sale for good cause after due notice given to the adverse party, *id.* But that didn't happen here.

---

[1]     On appeal, only Kelly and Jesse Wilcox challenge the district court's dismissal of their due process claim. *See* Aplt. Br. at 16, 18-20, 23.

Nevertheless, we perceive no constitutional violation stemming from the transfer itself. "The deprivation of procedural due process is not complete unless and until the state fails to provide adequate constitutionally essential procedures." *Winters v. Bd. of Cnty. Comm'rs.*, 4 F.3d 848, 856 (10th Cir. 1993). Here, the state court almost immediately stayed the execution sale upon the bank's motion for stay. The court then scheduled another hearing to resolve the competing ownership claims. Although the proceedings were halted before the hearing, there is no indication that was the result of the officials' conduct or the lack of any state procedure. Indeed, there is no allegation anywhere in the amended complaint that the nearly year-long delay in the state proceedings was caused by or resulted from defendants' conduct. And, because the court ultimately held the hearing and ordered the return of all horses not subject to execution, Kelly and Jesse Wilcox received all the process they were due.[2] Having thus failed to show a due process violation, plaintiffs cannot pursue a viable conspiracy claim. *See*

---

[2]     Plaintiffs point out that post-deprivation remedies are adequate only for "random and unauthorized" deprivations. *Winters*, 4 F.3d at 857. We recognize this principle, but it does not bolster plaintiffs' case. The deprivation here was complete the moment the horses were seized, and any alleged violation preceding that moment is barred by absolute immunity. The question then becomes whether plaintiffs can recover for lack of post-deprivation process. As plaintiffs readily acknowledge, the state afforded them a meaningful opportunity to challenge the levy. *See* Wyo. Stat. Ann. § 1-17-102 (affording judgment debtor ten days to request a hearing to claim an exemption in seized property). And the record demonstrates that they had other opportunities to be heard. Under these circumstances, we are satisfied that plaintiffs received adequate due process.

*Snell v. Tunnell*, 920 F.2d 673, 701-02 (10th Cir. 1990) ("[A] deprivation of a constitutional right is essential to proceed under a § 1983 conspiracy claim[.]").

As for the claims of municipal liability, plaintiffs fail to identify any municipal policy or custom that caused a constitutional violation. *See Moss*, 559 F.3d at 1168 ("To establish a claim for damages under § 1983 against municipal entities or local government bodies, the plaintiff must prove (1) the entity executed a policy or custom (2) that caused the plaintiff to suffer deprivation of constitutional or other federal rights."). That is not surprising, since the seizure here was not a matter of mere policy or custom created or endorsed by the Park County Sheriff's office; it was, rather, a legislatively mandated duty triggered by a facially valid and compulsory judicial order. *See* Wyo. Stat. Ann. § 1-17-310. Plaintiffs insist that Sheriff Steward may be liable as the final policy maker, but our analysis refutes that contention. Therefore, absent any municipal policy or custom, plaintiffs' municipal liability claims were properly dismissed.

Finally, plaintiffs contend that the district court should have allowed them to amend their complaint a second time. Under Fed. R. Civ. P. 15, a party may amend his complaint once as a matter of course, and thereafter only with the opposing party's consent or leave of court. We review the denial of leave to amend for an abuse of discretion, although when the decision is based on futility, we review the conclusion of futility de novo. *Cohen v. Longshore*, 621 F.3d

1311, 1314 (10th Cir. 2010). "A proposed amendment is futile if the complaint, as amended, would be subject to dismissal." *Anderson v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 521 F.3d 1278, 1288 (10th Cir. 2008). Here, no amendment would have salvaged plaintiffs' case. They never submitted a proposed amended complaint, and nothing in the facts they did allege suggests they could have cured their complaint's deficiencies.

Accordingly, the judgment of the district court is AFFIRMED.

Entered for the Court

Paul J. Kelly, Jr.
Circuit Judge