FILED
United States Court of Appeals
Tenth Circuit

December 29, 2017

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

LESLIE WILLIAM WELCH; EVA
WELCH, a minor child, by and through her
next friend, Leslie William Welch;
HAYDEN WELCH, a minor child, by and
through her next friend, Leslie William
Welch,

     Plaintiffs - Appellants,

v.

JANE SAUNDERS; JOHN SPAW;
KATHLEEN MUELLER; TED MINK,

     Defendants - Appellees.

No. 17-1202
(D.C. No. 1:15-CV-02286-WJM-STV)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **TYMKOVICH**, Chief Judge, **HARTZ** and **O'BRIEN**, Circuit Judges.
_____

Plaintiffs Leslie Welch and his two minor children appeal the district court's

orders granting the defendants dismissal and summary judgment on their claims

brought under 42 U.S.C. § 1983 and Colorado state law. They alleged that Kathleen

Mueller and Jefferson County, Colorado Sheriff's personnel (Sheriff Defendants)

_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
submitted without oral argument. This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel. It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

violated their Fourth, Fifth, and Fourteenth Amendment rights when they enforced a protection order and required Plaintiffs to move out of their leased residence. They also alleged that Ms. Mueller and Deputies Saunders and Spaw (the Deputies) committed civil theft under Colorado law by denying them access to their leasehold and personal property that was damaged or lost. We exercise jurisdiction under 28 U.S.C. § 1291 and affirm.

## I. BACKGROUND

We recite the facts alleged in the First Amended Complaint (the Complaint), which is the operative complaint. Mr. Welch leased real property at 5035 McIntyre Street, Golden, Colorado, from the property owner, Kenneth Mueller. The property consists of two buildings—a main house and a barn (the Barn), which includes a front and rear garage. Mr. Welch leased the Barn for a family residence and a storage facility for his business equipment.

Ms. Mueller obtained a county-court protection order against Mr. Mueller, her former husband, dated August 17, 2013 (the August Protection Order). The order included a provision that "no tenants and or caretakers employed by [Kenneth Mueller are] authorized to live on [the] property at 5035 McIntyre St." Aplt. App. at 102. The August Protection Order was modified on October 4, 2013, to remove that provision (the October Protection Order).

In October 2013 Ms. Mueller attempted to evict Plaintiffs from the Barn by filing an unlawful-detainer action, but the court dismissed the case. In November 2013, Ms. Mueller nailed shut a door connecting the Barn to the front garage.

2

Mr. Welch reported this, as well as the disappearance of his personal property, to the Sheriff's Department. Deputy Saunders directed Mr. Welch to surrender the garage- door opener to Ms. Mueller, despite knowing that Mr. Welch was the leaseholder.

On March 17, 2014, the Deputies directed Plaintiffs to vacate the Barn as required by the August Protection Order. Deputy Spaw falsified his report to state that the protection order had been amended on January 16, 2014, when, in fact, it had not. The official court registry would have revealed this.

Plaintiffs vacated the Barn on March 17, 2014, and did not return until after the county-court judge entered an order on July 24, 2014, clarifying that they were not required to vacate the Barn. Upon their return, they found that some of their property was damaged or missing.

Plaintiffs filed suit, asserting claims against the Sheriff Defendants under § 1983 for violation of their Fourth, Fifth, and Fourteenth Amendment rights, and against Ms. Mueller as a private party who "participated in and fully facilitated the actions of" the Deputies, *id.* at 82. They alleged that Sheriff Mink was liable under § 1983 for his failure to supervise and train the Deputies and that Ms. Mueller and the Sheriff Defendants conspired to deprive them of their property. They also brought claims of civil theft against Ms. Mueller and the Deputies under Colo. Rev. Stat. §§ 18-4-401 & 18-4-405.

The district court disposed of the case in two orders. First, it granted in part the motion to dismiss under Fed. R. Civ. P. 12(b)(6), ruling that Plaintiffs had failed

3

to state a § 1983 claim against Sheriff Mink or Ms. Mueller. The court also ruled that the civil-theft claim against Ms. Mueller and the Deputies failed to state a claim. Second, the district court granted summary judgment in favor of the Deputies on the remaining § 1983 claims.

## II. DISCUSSION

### A. Standards of Review

"We review a Rule 12(b)(6) dismissal de novo." *Nixon v. City & Cty. of Denver*, 784 F.3d 1364, 1368 (10th Cir. 2015) (internal quotation marks omitted). In doing so, "[w]e accept all the well-pleaded allegations of the complaint as true and construe them in the light most favorable to [Plaintiffs]. To survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face." *Id.* (citation, ellipses, and internal quotation marks omitted).

We also review de novo a district court's order granting summary judgment, "applying the same standards that the district court should have applied." *Schanzenbach v. Town of Opal*, 706 F.3d 1269, 1272 (10th Cir. 2013) (internal quotation marks omitted). "Summary judgment is appropriate if the pleadings and the record establish that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Id.* Plaintiffs do not assert that any of the Sheriff Defendants are liable in their official capacities so we consider only whether they are liable in their individual capacities.

4

**B. Dismissal of Claims Against Sheriff Mink**

Plaintiffs contend that Sheriff Mink is personally liable for damages incurred from their removal from the Barn on March 17, 2014. But the Complaint fails to identify any action by him (as opposed to a subordinate) that contributed to Plaintiffs' alleged injuries. "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior.*" *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). As we have explained, "[Section] 1983 imposes liability for a defendant's own actions—personal participation in the specific constitutional violation complained of is essential." *Henry v. Storey*, 658 F.3d 1235, 1241 (10th Cir. 2011). It is not enough to say that Sheriff Mink failed to protect Plaintiffs, when the Complaint provides no particulars on what relevant information he had or what specific action he should have taken. We affirm the order dismissing the claims against Sheriff Mink.

**C. Dismissal of § 1983 Claims Against Ms. Mueller**

Plaintiffs alleged that Ms. Mueller was liable under § 1983 because she requested the Deputies to enforce the August Protection Order knowing it had been modified to remove the provision that "no tenants and or caretakers employed by [Kenneth Mueller are] authorized to live on [the] property at 5035 McIntyre St.," Aplt. App. at 102. The district court dismissed the § 1983 claims against Ms. Mueller, holding that the amended complaint failed to allege the requisite joint action between Ms. Mueller and the Sheriff Defendants. We affirm.

5

To state a claim under § 1983, Plaintiffs must allege "that they were deprived of a right secured by the Constitution or laws of the United States, and that [this] deprivation was committed under color of state law." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999). "[T]he under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *Id.* at 50 (internal quotation marks omitted).

Private conduct constitutes state action if it is "fairly attributable to the State." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). In general, however, "private misuse of a state statute does not describe conduct that can be attributed to the State." *Id.* at 941. And merely reporting an offense to state officials does not satisfy the color-of-state-law requirement. *See Benavidez v. Gunnell*, 722 F.2d 615, 618 (10th Cir. 1983). In particular, when a private person invokes the aid of state personnel and institutions to seize property from someone, the private person does not act under color of state law unless the state law being applied is unconstitutional or the private person has participated in a conspiracy with the state personnel. *See Yanaki v. Iomed, Inc.*, 415 F.3d 1204, 1209-10 (10th Cir. 2005).

The Complaint contains no allegation that any statute is unconstitutional. It relies solely on Ms. Mueller's interaction with the Deputies. But, as noted by the district court, the Complaint does not come close to asserting facts showing that she conspired with them. Indeed, Plaintiffs do not argue to the contrary on appeal. Dismissal of the § 1983 claim against her was therefore proper.

6

Plaintiffs' reliance on *Wyatt v. Cole*, 504 U.S. 158 (1992), is misplaced. That case involved a challenge to the constitutionality of a state replevin statute, and the issue before the Court was the availability of qualified immunity to private persons. Its holding is irrelevant here.

**D. Dismissal of Civil-Theft Claims against Ms. Mueller and Deputies**

Plaintiffs brought civil-theft claims against Ms. Mueller and the Deputies, under Colo. Rev. Stat. §§ 18-4-401 & 18-4-405. To prevail on such a claim, the plaintiff must "establish that (1) defendant knowingly obtained control over his property without authorization and (2) defendant did so with the specific intent to permanently deprive him of the benefit of the property." *Huffman v. Westmoreland Coal Co.*, 205 P.3d 501, 509 (Colo. App. 2009). The district court properly dismissed these claims. The Complaint does not adequately allege that any of the defendants obtained control over Plaintiffs' property, and the Complaint alleges no facts that would support the conclusion that any defendant intended to *permanently* deprive Plaintiffs of their property.

**E. Summary Judgment Granted to Deputies**

The district court granted the Deputies' summary-judgment motion, concluding that they were entitled to absolute quasi-judicial immunity. Under the doctrine of quasi-judicial immunity, "officials charged with the duty of executing a facially valid court order enjoy absolute immunity from liability for damages in a suit challenging conduct prescribed by that order." *Moss v. Kopp*, 559 F.3d 1155, 1163 (10th Cir. 2009) (brackets and internal quotation marks omitted). We have held that

7

for a state official to be entitled to quasi-judicial immunity, not only must the court order be facially valid, but "[1] the judge issuing the disputed order must be immune from liability in his or her own right, [2] the officials executing the order must act within the scope of their own jurisdiction, and [3] the officers must only act as prescribed by the order in question." *Id.*

Plaintiffs' challenge to the district court's grant of quasi-judicial immunity to the Deputies appears to focus only on whether the August Protection Order was facially valid when they used it to direct Plaintiffs to vacate the Barn. They make three arguments. First, they claim that the Deputies should have known that such orders can be modified and therefore they should have checked the court registry and discovered that the language requiring removal from the Barn had been deleted. Second, they claim that the Deputies had specific information that the Order had been amended and therefore should have discovered the deletion of the operative language. Third, they claim that the Deputies should have known that the order could not have required Plaintiffs to do anything because Plaintiffs were not parties to the order.

To assess this challenge, it is helpful to set forth the policies that support requiring only that the order be facially valid. "State officials must not be required to act as pseudo-appellate courts scrutinizing the orders of judges." *Turney v. O'Toole*, 898 F.2d 1470, 1473 (10th Cir. 1990) (internal quotation marks omitted). To hold them liable "for executing an order because the order did not measure up to statutory standards would have just that effect." *Id.* "The public interest demands strict adherence to judicial decrees." *Valdez v. City & Cty. of Denver*, 878 F.2d 1285, 1289

8

(10th Cir. 1989). Granting officers quasi-judicial absolute immunity when they execute court orders "they are powerless to control" serves the interests of "[s]imple fairness" and "the court's authority and ability to function." *Moss*, 559 F.3d at 1165. "'Facially valid' does not mean 'lawful.' An erroneous order can be valid." *Turney*, 898 F.2d at 1473.

Thus, for an order to be "facially valid" means simply that it is valid on its face. The availability of immunity to officials executing an order does not depend on the officials' researching the law, checking court records, or doing anything beyond looking at the face of the order. If nothing else, imposing such duties would slow the essential work of executing orders, impairing "the court's authority and ability to function." *Moss*, 559 F.3d at 1165. We conclude that the order here was facially valid.

If the Deputies knew that the August Protection Order had been superseded, we would have a more challenging issue to resolve. But the record would not support a finding of such knowledge. Plaintiffs point to a statement in Deputy Spaw's incident report of March 17, 2014, stating that the "order was amended on January 16, 2014, by Honorable Thomas E. Vance." Aplt. App. at 233. Deputy Spaw later submitted an affidavit, however, explaining that at the time he "believed that the protection order [Ms. Mueller] provided was an amended protection order issued on January 16, 2014, because the court clerk had signed, stamped, and dated this certified copy of the protection order on January 16, 2014." *Id.* at 238. Nothing in the record casts doubt on that assertion. The explanation makes sense; there in

fact was no amended order issued on January 16, 2014; and, most importantly, the incident report goes on to state that the "amended" order contained the very "no tenants" language of the August Protection Order that was later deleted. *See id.* at 233. The district court properly granted quasi-judicial immunity to the Deputies.

## III.   CONCLUSION

The district court's judgment is affirmed.

Entered for the Court

Harris L Hartz
Circuit Judge