**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 30, 2015**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

RICKY NIXON,

      Plaintiff - Appellant,

v.

CITY AND COUNTY OF DENVER;
CHARLES GARCIA, former Manager of
Safety in his official capacity,

      Defendants - Appellees.

No. 14-1165

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. No. 1:13-02324-RPM)**

Before **HARTZ**, **GORSUCH**, and **MATHESON**, Circuit Judges.

**HARTZ**, Circuit Judge.

The first task of an appellant is to explain to us why the district court's decision
was wrong. Recitation of a tale of apparent injustice may assist in that task, but it cannot
substitute for legal argument. Later the appellant may have the additional burden of
responding to the appellee's arguments that the district court's judgment can be affirmed

on grounds not relied upon by that court.  But, again, addressing these arguments will not help the appellant if the reasons that were given by the district court go unchallenged.  On this appeal, counsel for appellant Ricky Nixon tells a story of injustice and argues against positions not adopted by the district court.  Counsel utterly fails, however, to explain what was wrong with the reasoning that the district court relied on in reaching its decision.  As a result, we address only one sentence of the opening brief on its merits before affirming the judgment below.

## I.     THE DISPUTE AND THE FEDERAL LITIGATION

Nixon was a Denver police officer.  He was involved in two high-profile incidents in which claims of excessive force generated substantial negative publicity for the Denver Police Department:  a traffic stop of Alex Landau in January 2009 and an incident outside the Denver Diner restaurant later that year.  Nixon was cleared of wrongdoing in the first incident but on April 11, 2011, Defendant Charles Garcia, the Denver Manager of Safety at the time, ordered Nixon's suspension for 30 days for use of excessive force at the restaurant and ordered his termination for not telling the truth about the incident.  A panel of the Denver Civil Service Commission reversed the termination, and the full Commission affirmed the panel decision, but the Colorado Court of Appeals ultimately remanded the matter to the Commission for further proceedings.  *See Nixon v. City & Cnty. of Denver*, No. 13CA2059, 2014 WL 7201703, at *2 (Colo. App. Dec. 18, 2014).

While the Commission decision was being challenged in court by the City and County of Denver (the City), Nixon filed suit against Garcia, the City, and others under

2

42 U.S.C. § 1983 in the United States District Court for the District of Colorado. The court dismissed all the claims. On appeal Nixon challenges the dismissal of only two. One is the claim that Garcia and the City violated his rights under the First Amendment by proceeding against him in retaliation for his protected speech. The other is a due-process claim alleging that he was entitled to procedural due process because his reputation as a police officer was a liberty interest protected by the Due Process Clause.

## II. THE GOVERNING LAW AND THE DISTRICT COURT'S DECISION

"The familiar *Garcetti/Pickering* analysis governs First Amendment retaliation claims." *Trant v. Oklahoma*, 754 F.3d 1158, 1165 (10th Cir. 2014) (footnote omitted); *see Garcetti v. Ceballos*, 547 U.S. 410 (2006); *Pickering v. Bd. of Educ.*, 391 U.S. 563, (1968). This analysis has five elements:

> (1) whether the speech was made pursuant to an employee's official duties; (2) whether the speech was on a matter of public concern; (3) whether the government's interests, as employer, in promoting the efficiency of the public service are sufficient to outweigh the plaintiff's free speech interests; (4) whether the protected speech was a motivating factor in the adverse employment action; and (5) whether the defendant would have reached the same employment decision in the absence of the protected conduct.

*Trant*, 754 F.3d at 1165 (internal quotation marks omitted). Speech is on a matter of public concern if it involves a matter of interest to the community. *See Brammer-Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192, 1205 (10th Cir. 2007). "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Connick v. Myers*, 461 U.S. 138, 147–48 (1983) (footnote omitted). We consider "the

3

motive of the speaker and whether the speech is calculated to disclose misconduct or merely deals with personal disputes and grievances unrelated to the public's interest." *Brammer-Hoelter*, 492 F.3d at 1205 (internal quotation marks omitted). In particular, speech that exposes official impropriety generally involves matters of public concern, while "speech that simply airs grievances of a purely personal nature typically does not." *Id.* (internal quotation marks omitted). "It is not sufficient that the topic of the speech be of general interest to the public; in addition, what is *actually said* must meet the public concern threshold." *Burns v. Bd. of Cnty. Comm'rs*, 330 F.3d 1275, 1286 (10th Cir. 2003) (internal quotation marks omitted).

A claim that the government has violated the Due Process Clause by impugning a plaintiff's reputation (a "stigma-plus" claim) requires "(1) governmental defamation and (2) an alteration in legal status." *Guttman v. Khalsa*, 669 F.3d 1101, 1125 (10th Cir. 2012); *Gwinn v. Awmiller*, 354 F.3d 1211, 1216 (10th Cir. 2004). "When these two elements are present, the government may have violated a liberty interest that triggers a procedural due process protection." *Guttman*, 669 F.3d at 1125 (brackets and internal quotation marks omitted). An employee's liberty interest may be infringed if his government employer falsely impugns his good name or integrity in the course of terminating him. *See id.* at 1125–26. Once infringement of a liberty interest is established, the employee must show that he was not afforded an adequate name-clearing hearing that comports with the Due Process Clause. *See McDonald v. Wise*, 769 F.3d 1202, 1213 (10th Cir. 2014).

4

The district court dismissed Nixon's First Amendment and due-process claims for failure to state a claim for relief. *See* Fed. R. Civ. P. 12(b)(6), First, the court ruled that Nixon's testimony before the Civil Service Commission in 2013 regarding a proposed rule change was on a matter of public concern but that it could not have been a motivating factor in Garcia's termination decision in 2011. Second, the court determined that the other statements of Nixon (and his supporters in his defense) concerning his termination and related administrative proceedings were not on a matter of public concern. Finally, regarding the due-process claim, the court held that there was no support for any contention that the process Nixon received in the termination proceedings was constitutionally inadequate.

"We review a Rule 12(b)(6) dismissal de novo." *Thomas v. Kaven*, 765 F.3d 1183, 1190 (10th Cir. 2014). We "accept all the well-pleaded allegations of the complaint as true and . . . construe them in the light most favorable to [Nixon]." *Id.* "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

## III. NIXON'S DEFICIENT OPENING BRIEF ON APPEAL

It is unfortunately commonplace that an issue on appeal is waived because it is not adequately developed in a party's brief. This, however, is a (fortunately rare) case in which *no* pertinent issue is adequately developed.

5

Nixon's opening brief does almost nothing to advance his cause. The first 11 of its 18 pages are devoted to the procedural background of the case and allegations in his complaint, much of which is of no apparent relevance to the appeal.[1] Most notable is the repeated reference to the purported motive for Defendants' actions against him—not his speech (which is never mentioned as the motive) but their "fear of the publicity and political reaction to the publicity which was intense." Aplt. Br. at 8.

That left only seven pages of the opening brief to accomplish the essential task of showing how the district court had erred in the three rulings that underlay its dismissal of Nixon's stigma-plus due-process claim (dismissed because he had not shown that the process afforded him by the City was deficient) and his First Amendment retaliation claim (dismissed because (1) he had not alleged facts showing that his comments on a proposed change in City hearing procedures motivated any retaliatory action and (2) he had not shown that any other statements were on a matter of public concern). Yet the brief proceeds to devote four of those seven pages as follows: one page to the assertion that Nixon's discipline was a "response to . . . media and political pressure," *id.* at 14 (an assertion of no apparent relevance to his claims); two pages to a section entitled, "Plaintiff's Expressive Conduct was not Limited to his Official Duties," *id.* (full capitalization omitted) (a point not contested by the district court's ruling, although the

---

[1] We note that Plaintiff's opening brief does not contain an *alphabetized* table of authorities, a jurisdictional statement, or a statement of the issues presented for review, as required by Federal Rule of Appellate Procedure Rule 28(a).

discussion may have anticipated a potential argument in the appellees' brief that the judgment could be sustained on the alternative ground of the first element of the *Garcetti/Pickering* analysis); and one page to a section arguing that the federal court was not bound by a decision of a state district court (a decision in no way relied on in the federal district court's decision). It is no wonder that the brief's remaining three pages do not carry Nixon's burden on appeal.

To begin with, we affirm the district court's dismissal of the stigma-plus due-process claim because Nixon's opening brief contains nary a word to challenge the basis of the dismissal—namely, that even if Nixon had a protected liberty interest, he has not shown that the procedures afforded him were constitutionally defective. *See EEOC v. C.R. England, Inc.*, 644 F.3d 1028, 1051 n.18 (10th Cir. 2011) ("Because [appellant] has failed to present any argument or authority in support of this particular . . . claim, we decline to further consider it on appeal.").

Nixon does only slightly better in challenging the district court's ruling that none of his statements (aside from his comment on a possible change in the rules for disciplinary proceedings) was on a matter of public concern. His opening brief does assert that he spoke on matters of public concern and does cite some relevant law. But he describes his speech in general terms, never identifying any specific statement. *See* Aplt. Br. at 12–13 (Nixon "by his conduct and speech engaged in expressions which exposed government wrongdoing, did help the public evaluate the performance of public officials and agencies, irrespective of the judicial or administrative proceedings wherein his

speech/actions was involved"); *id.* at 17 ("By [Nixon's] continuing efforts to support professional law enforcement and career services' determinations, including his conduct and his Union Official's speech on his behalf is protected by the First Amendment." (sic)). We can hardly review the content, form, and context of what was actually said based on such vague references to allegedly protected speech. *See Connick*, 461 U.S. at 147–48; *Burns*, 330 F.3d at 1286; *Craven v. Univ. of Colo. Hosp. Auth.*, 260 F.3d 1218, 1226 (10th Cir. 2001) ("It is the place of counsel, not the Court of Appeals, to identify the specific instances of speech upon which the plaintiff seeks to base her claim."). By failing to rest his argument on the specific facts of this case, Nixon waived his challenge to the district court's public-concern ruling. *See United States v. Apperson*, 441 F.3d 1162, 1195 (10th Cir. 2006) (appellant waived argument because he "fail[ed] to offer any detailed explanation of how the district court erred"); *Anderson v. Hardman*, 241 F.3d 544, 545 (7th Cir. 2001) ("[A] brief must contain an argument consisting of more than a generalized assertion of error, with citations to supporting authority. . . . Yet [appellant] offers no articulable basis for disturbing the district court's judgment.").

That leaves only the third ruling underlying the district court's dismissal of the case: that Nixon's 2013 statement before the Civil Service Commission opposing a proposed rule change, although on a matter of public concern, could not have been a motivating factor in Garcia's termination decision in 2011. Nixon's opening brief does have a one-sentence paragraph touching on the matter. The final paragraph before the brief's conclusion states: "The nexus in time between [Nixon's] testimony and media

8

statements before the Civil Services Commission and the continuing [City] prosecution, attempting to support their unconstitutional actions against [Nixon] in their [state-court] action demonstrates [the City's] retaliation against [Nixon] for exercising his First Amendment rights by speaking in a public forum[.]" Aplt. Br. at 18. A reader working to find arguments for Nixon could read the sentence to state that the retaliation for Nixon's Commission speech was the City's decision to seek state-court review of the Commission ruling in his favor. We have no obligation to address the point because the sentence fails to satisfy minimal standards for intelligibility that we must require from lawyers, it is misleadingly placed under a heading for a different issue,[2] and the brief does not even say that the sentence is intended as a response to a ruling by the district court or an argument by the City. *See United States v. Cooper*, 654 F.3d 1104, 1127–28 (10th Cir. 2011) (appellant insufficiently raised claim on appeal because his brief provided only a one-sentence conclusory assertion with "no other argument or authority in support of [the] claim").

Nevertheless, Nixon's sentence suggests an interesting contention, which we briefly address. The contention is that the City would not have pursued state-court review of the Commission decision in Nixon's favor if he had not made his statement opposing a rule change. But this is implausible absent additional evidence of motive. After all, the City had determined to fire Nixon and had already appealed the

---

[2] The heading is: "PLAINTIFF'S EXPRESSIVE CONDUCT AS SET FORTH HEREIN IS PROTECTED UNDER THE FIRST AMENDMENT." Aplt. Br. at 17.

Commission panel's decision (reversing Nixon's termination) to the full Commission in April 2012, well before Nixon's statement in February 2013. The City's action challenging the full Commission's adverse decision was simply the next step in the process already set in motion, and Nixon's complaint does not provide any reason to believe that his speech, as opposed to the original reasons for his termination, motivated the City's action. As the Supreme Court has said, employers need not refrain from previously planned actions upon learning that an individual has engaged in protected activity and "their proceeding along lines previously contemplated, though not yet definitively determined, is no evidence whatever of causality." *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 272 (2001) (per curiam) (Title VII retaliation claim); *see Trant*, 754 F.3d at 1170–71 (fact that alleged retaliatory comments to media were made after plaintiff's protected speech did not support claim that they were in retaliation for that speech because "they were plainly directed at [an] ongoing dispute . . . that *preceded* any protected speech" (emphasis added)). The district court's ruling was correct.

## IV.    CONCLUSION

We AFFIRM the judgment below.

10