**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

BILLY JACK WIGLESWORTH,

    Plaintiff - Appellant,

v.

CHRISTOPHER PAGEL; THE GEO
GROUP, INC.,

    Defendants - Appellees.

No. 14-1509
(D.C. No. 1:13-CV-00957-KMT)
(D. Colorado)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **KELLY**, **LUCERO**, and **McHUGH**, Circuit Judges.
_____


After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist in the determination of

this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore

ordered submitted without oral argument.

## I. BACKGROUND

Plaintiff-appellant Billy Wiglesworth appeals the dismissal of his complaint

pursuant to Federal Rule of Civil Procedure 12(b)(6). Mr. Wiglesworth is an inmate

_____

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

incarcerated by the Alaska Department of Corrections. During the relevant time period, Mr. Wiglesworth was incarcerated at the Hudson Correctional Facility (Hudson) in Hudson, Colorado. Hudson is a private correctional facility owned and operated by Defendant The GEO Group, Inc. (GEO) under contract from the Alaska Department of Corrections.

In June 2012, Mr. Wiglesworth was presented with an incident report charging him with forging a television request form in violation of Alaska Administrative Code tit. 22, § 05.400(c)(12), which identifies a prisoner's forging of a document as a "[h]igh-moderate" infraction. Defendant Christopher Pagel scheduled a disciplinary hearing in which he acted as the prison hearing officer. At the hearing, Mr. Wiglesworth informed Mr. Pagel that he was invoking his right to cross-examine the staff members involved in creating the incident report. *See* Alaska Admin. Code tit. 22, § 05.420(b)(5)(A) ("[I]f the prisoner or the disciplinary tribunal has requested the appearance of the staff member who wrote the disciplinary report, the staff member must be called into the room and questioned . . . ."); *James v. State*, 260 P.3d 1046, 1055 (Alaska 2011) (holding prisoner's state due process rights were violated when accusing prison officials were not present at disciplinary hearing). Mr. Pagel postponed the disciplinary hearing twice, but neither of the two staff members who accused Mr. Wiglesworth ever appeared to testify in person. Mr. Wiglesworth was found guilty and sentenced to thirty days of punitive segregation.

After Mr. Wiglesworth exhausted his administrative remedies, he filed a civil action in Alaska state court. Mr. Wiglesworth argued the disciplinary hearing

2

violated his due process rights under the Alaska Constitution and state administrative code, which Hudson was obliged by contract to follow. Mr. Wiglesworth also brought claims of negligence per se based on the defendants' violation of the Alaska regulation governing prison disciplinary proceedings. *See* Alaska Admin. Code tit. 22, § 05.420(b)(5)(A). GEO and Mr. Pagel removed the case to the U.S. District Court for the District of Alaska, invoking the court's diversity jurisdiction under 28 U.S.C. § 1332(a). The case was subsequently transferred to the District of Colorado as the more convenient forum, pursuant to 28 U.S.C. § 1404(a). The Colorado federal district court initially dismissed Mr. Wiglesworth's complaint as frivolous pursuant to 28 U.S.C. § 1915A(b)(1). On appeal, this court reversed, holding the district court improperly analyzed Mr. Wiglesworth's claims solely under federal law. We remanded to the district court for consideration of the claims under state law.

On remand, the district court granted the defendants' motion to dismiss. First, the district court determined that Mr. Wiglesworth's state due process claims were rendered moot when he was transferred out of Hudson and into another facility in Alaska. Second, the district court determined that Colorado law governed Mr. Wiglesworth's negligence per se claims. And, because Mr. Wiglesworth had relied solely on Alaska law for these claims, the district court granted the defendants' motion to dismiss.[1] Mr. Wiglesworth appeals.

---

[1] The district court did give Mr. Wiglesworth thirty days to file an amended complaint to assert negligence per se claims premised on a violation of Colorado law. But, Mr. Wiglesworth voluntarily waived any claims for negligence per se premised on Colorado law. Accordingly, the district court entered final judgment.

## II. DISCUSSION

Because Mr. Wiglesworth is proceeding pro se, "we review his pleadings and other papers liberally and hold them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007). Under this standard, "we make some allowances for the pro se plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements," but we "cannot take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record." *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (internal quotation marks and brackets omitted). Applying these principles, we understand Mr. Wiglesworth to make two arguments on appeal: (1) that the district court improperly applied Colorado law to his negligence per se claims and (2) that the district court's mootness determination was erroneous.

We review de novo a district court's dismissal of Mr. Wiglesworth's claims under Rule 12(b)(6). *See Nixon v. City & Cnty. of Denver*, 784 F.3d 1364, 1368 (10th Cir. 2015). In so doing, we "accept[] all well-pled facts as true and view[] them in the light most favorable to the plaintiff." *Barnes v. Harris*, 783 F.3d 1185, 1191–92 (10th Cir. 2015). We further review the district court's determination of questions involving mootness de novo. *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1122 (10th Cir. 2010). Finally, we review the district court's choice-

4

of-law determination de novo. *Boone v. MVM, Inc.*, 572 F.3d 809, 811 (10th Cir. 2009). We now address Mr. Wiglesworth's claims.

### A. *Mr. Wiglesworth's Negligence Per Se Claims*

Mr. Wiglesworth premises his negligence per se claims on the assertion that the defendants violated his rights under the Alaska Constitution and Alaska state law. Because the case was transferred from Alaska to Colorado pursuant to 28 U.S.C. § 1404(a), the district court was required to conduct a choice-of-law analysis to determine whether Mr. Wiglesworth's claims should be analyzed under Alaska or Colorado law. A federal court sitting in diversity usually applies the forum state's— in this case Colorado's—choice-of-law rules. *TPLC, Inc. v. United Nat'l Ins. Co.*, 44 F.3d 1484, 1490 (10th Cir. 1995). But where, as here, "a case is transferred from one forum to another under 28 U.S.C. § 1404(a), . . . the transferee court must follow the choice of law rules of the transferor court." *Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1532 (10th Cir. 1996). Thus, we apply Alaska's choice-of-law rules to Mr. Wiglesworth's negligence per se claims.

Alaska has adopted the approach of the Restatement (Second) of Conflict of Laws in its choice-of-law analysis. *Savage Arms, Inc. v. W. Auto Supply Co.*, 18 P.3d 49, 53 (Alaska 2001). Alaska law recognizes the tort of negligence per se. *N. Lights Motel, Inc. v. Sweaney*, 561 P.2d 1176, 1183 (Alaska 1977). Under the Restatement, "[t]he rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles

5

stated in § 6." Restatement (Second) of Conflict of Laws § 145(1) (1971). Section 6

of the Restatement establishes seven factors relevant to a choice-of-law analysis:

> (a) the needs of the interstate and international systems,
> (b) the relevant policies of the forum,
> (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
> (d) the protection of justified expectations,
> (e) the basic policies underlying the particular field of law,
> (f) certainty, predictability and uniformity of result, and
> (g) ease in the determination and application of the law to be applied.

*Id.* § 6(2). The Restatement further directs courts to consider four types of contacts

when applying the principles established in § 6:

> (a) the place where the injury occurred,
> (b) the place where the conduct causing the injury occurred,
> (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and
> (d) the place where the relationship, if any, between the parties is centered.

*Id.* § 145(2). Finally, the Restatement directs that "[t]hese contacts are to be

evaluated according to their relative importance with respect to the particular issue."

*Id.*

The district court considered the types of contacts listed in § 145(2), but did

not specifically address the factors enumerated in § 6. Viewing the parties' contacts

in light of the § 6 factors, we disagree with the district court's conclusion that

Colorado has the most significant relationship under the facts of this case.

Mr. Wiglesworth argues the defendants had a duty to him to conduct the

disciplinary hearing in accordance with Alaska law. He asserts that the defendants'

failure to comply with Alaska statutory and regulatory law in conducting the hearing

6

breached that duty, thereby forming the basis of a negligence per se claim. The alleged breach of Alaska law occurred in Colorado, but did so during a hearing conducted under the authority of Alaska law. Mr. Wiglesworth remains within the jurisdiction of Alaska, even though he was transferred to a prison facility in Colorado. *See Overturf v. Massie*, 385 F.3d 1276, 1279 (10th Cir. 2004) (recognizing that prisoners transferred to another state remain within the jurisdiction of the state in which the prisoner was originally sentenced). And the defendants only had the authority to discipline Mr. Wiglesworth in the first instance because they were acting under authority delegated to them by the Alaska Department of Corrections. *See Hertz v. State*, 22 P.3d 895, 902–03 (Alaska Ct. App. 2001) (recognizing that the Alaska Department of Corrections had delegated authority to private prison); Alaska Stat. § 33.30.031(a) (authorizing Alaska Department of Corrections to enter into agreements with private prison facilities *only if* those facilities "provide a degree of custody, care, and discipline similar to that required by the laws of" Alaska). Thus, although the disciplinary hearing—and the defendants' allegedly negligent conduct— occurred in Colorado, our analysis of the first two § 145(2) contacts must take into account that these events occurred in Colorado *only* by virtue of the defendants' delegated authority from the State of Alaska.

As the district court recognized, Mr. Wiglesworth is a resident of Alaska, despite being housed in Colorado. Mr. Pagel is a resident of Colorado, while GEO is a Florida-based corporation doing business in Colorado. Thus, the third § 145(2) contact points to Colorado and to some extent, Alaska.

7

As to the fourth § 145(2) contact, we think it clear on the facts of this case that the parties' relationship is centered in Alaska. Although physically located in Colorado, the sole basis for the parties' interaction was premised on their relationship to Alaska. But for his status as an Alaska prisoner, Mr. Wiglesworth would never have been under the defendants' supervision. And but for the defendants' contractual relationship with the Alaska Department of Corrections, they would never have come into contact with Mr. Wiglesworth. The parties' physical presence in Colorado was incidental to their relationship. *See* Restatement (Second) of Conflict of Laws § 145 cmt. e ("Situations do arise, however, where the place of injury will not play an important role in the selection of the state of the applicable law. This will be so, for example, when the place of injury can be said to be fortuitous or when for other reasons it bears little relation to the occurrence and the parties with respect to the particular issue."); *id.* § 146 cmt. d ("Situations will, however, arise where, although conduct and injury occur in the same state, some other state is that of most significant relationship and therefore the state of the applicable law even with respect to such issues . . . which would usually be determined by the local law of the state of conduct and injury."). Thus, the parties' relationship was centered in Alaska.

Our conclusion that Alaska is the state with the most significant relationship is bolstered when we consider the § 145(2) contacts in light of the § 6 factors. Alaska has a clear interest in ensuring its prisoners are treated in accordance with its laws and constitution. And we have identified no competing Colorado interests that would

8

be frustrated by applying Alaska law in this instance.[2] Moreover, the parties' justified expectations were that Alaska law would govern their interactions. Mr. Wiglesworth, as an Alaska prisoner, was entitled to the protection of the Alaska Constitution and state law while in Alaska custody. Similarly, the defendants knew they were under an obligation to comply with Alaska law when supervising Mr. Wiglesworth's disciplinary proceedings. Additionally, applying Alaska law to a dispute between an Alaska prisoner and prison officials under contract with the Alaska Department of Corrections promotes uniformity and predictability because it ensures that Alaska prisoners are treated the same, regardless of where they happen to be physically housed.[3] At the same time, it ensures prison officials know of the scope of their duties and potential liabilities vis-à-vis Alaska prisoners, without having to adjust to other states' local laws.

---

[2] The district court concluded that a negligence per se claim under Colorado law must be premised on a violation of a Colorado statute. But this conclusion is incorrect. Colorado courts allow negligence per se claims premised on non-Colorado statutes, so long as the statute is adopted for the public's safety, the plaintiff falls within the class the statute was meant to protect, and the plaintiff's injury is the type the statute was meant to prevent. *Hageman v. TSI, Inc.*, 786 P.2d 452, 453–55 (Colo. App. 1989) (allowing Colorado negligence per se claim premised on violation of federal highway regulations). Thus, Colorado law would not be offended by applying Alaska law in these circumstances.

[3] We also note that applying Alaska law in these circumstances avoids the temptation for forum shopping. In this case, Mr. Wiglesworth brought his Alaska state law claims in Alaska state court. It was the defendants who sought removal and transfer to Colorado. Defendants' choice of forum should not affect the scope of Mr. Wiglesworth's rights under Alaska law.

Thus, we conclude the district court erred in its choice-of-law analysis. On remand, the court should analyze Mr. Wiglesworth's negligence per se claims under Alaska law.

### B. *Mr. Wiglesworth's Due Process Claims*

Mr. Wiglesworth's final claim on appeal is that the district court incorrectly determined his due process claims were moot. Mr. Wiglesworth sought declaratory and injunctive relief for his state law due process claims. Specifically, he requested (1) a declaration stating that Mr. Pagel violated Mr. Wiglesworth's due process right to confront and cross-examine his accusers during the disciplinary hearing, (2) a declaration that Mr. Pagel had violated Mr. Wiglesworth's due process rights by improperly questioning his staff advocate, and (3) an injunction ordering the defendants to reverse the disciplinary sanction as unfounded.[4] After this action was initiated, Mr. Wiglesworth was transferred out of Hudson and into a correctional facility in Alaska. The district court concluded that Mr. Wiglesworth's transfer to another facility rendered his due process claims against the defendants moot because any relief awarded by the court would have no effect on the defendants' future behavior toward Mr. Wiglesworth.

On appeal, Mr. Wiglesworth does not challenge the district court's mootness determination with regard to his requests for declaratory relief. Rather, he argues the

---

[4] Mr. Wiglesworth also requested declaratory relief in relation to another prison official, Joe Driver. But Mr. Wiglesworth voluntarily dismissed his claim against Mr. Driver on March 21, 2014. Accordingly, we do not address this request for relief.

court can still grant him effective relief "by ordering the disciplinary finding reversed and expunged from Mr. Wiglesworth's institutional record." According to Mr. Wiglesworth, the existence of the disciplinary record can be used to harm his future parole opportunities, as well as in any future prison disciplinary proceedings. He therefore argues that his request for injunctive relief was not moot.

When determining whether a claim for injunctive relief is moot, "the crucial question is whether granting a present determination of the issues offered will have some effect in the real world. When it becomes impossible for a court to grant effective relief, a live controversy ceases to exist, and the case becomes moot." *Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1311 (10th Cir. 2010) (internal quotation marks omitted). Importantly, any relief fashioned by the court must have prospective effect and not merely amount to a declaration that the prisoner was wronged. *Jordan v. Sosa*, 654 F.3d 1012, 1027–28 (10th Cir. 2011). Applying these principles, we have previously held that "penitentiary-specific" claims can be mooted by a prisoner's transfer to another facility. *Id.* at 1027–29. But, when a prisoner's request for relief implicates system-wide interests, we have indicated that a prisoner's transfer does not moot the claim. *See id.*

In this case, Mr. Wiglesworth has argued that the disciplinary finding is the product of the defendants' unconstitutional conduct and that its presence on his record carries collateral consequences of a system-wide nature. As a remedy, he has asked the court to reverse the disciplinary finding and to order it expunged from his disciplinary record. If Mr. Wiglesworth is ultimately successful on the merits of his

11

claims, this is relief the court can offer that will have some effect in the real world. Accordingly, Mr. Wiglesworth's claim for injunctive relief was not mooted by his transfer to another facility.

## III.    CONCLUSION

For the reasons discussed above, we REVERSE and REMAND to the district court for further proceedings consistent with this opinion. We further GRANT Mr. Wiglesworth's request to proceed in forma pauperis, but we remind him of his obligation to continue making partial payments until the fee has been paid in full.

Entered for the Court


Carolyn B. McHugh
Circuit Judge