**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 23, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

SUSAN CVANCARA,

     Plaintiff - Appellant,

v.

STEVE REAMS,

     Defendant - Appellee.

No. 16-1093
(D.C. No. 1:14-CV-03106-RM-CBS)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **KELLY**, **GORSUCH**, and **MATHESON**, Circuit Judges.
_____

     Susan Cvancara appeals from the district court's entry of summary judgment

on her claim that she was fired from her job with the Weld County, Colorado,

Sheriff's Office (WCSO) in retaliation for exercising her First Amendment

free-speech rights. We have jurisdiction under 28 U.S.C. § 1291 and affirm.

_____

     [*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I.   BACKGROUND

Ms. Cvancara worked as a victim's advocate for the WCSO's Victim Services Unit (VSU) from 2005 until December 2013.  In August 2013, Deborah Calvin was hired to be Director of the VSU, a position Ms. Cvancara had held until she was demoted in 2011 following a series of warnings and discipline for her behavior, which included spreading rumors and making disparaging comments about other employees.

At the time she became the full-time VSU Director, Ms. Calvin was a realtor, and she continued to work as a realtor while employed as the Director.  Ms. Cvancara soon became concerned that Ms. Calvin was attending to her real estate job while on VSU time.  Ms. Cvancara expressed that concern to Investigator David Porter and also complained to him that Ms. Calvin was changing policies in a manner that disproportionately shifted work away from her and onto Ms. Cvancara, who was the only other paid victim advocate, and that Ms. Calvin was hired to be the VSU Director due to political connections.  Investigator Porter told Ms. Cvancara to address the issues by following her chain of command.  Ms. Cvancara also relayed some concerns about Ms. Calvin (precisely which ones are unclear from the record) to WCSO Commander Ed Haffner who, like Investigator Porter, was not in her chain of command.

Investigator Porter relayed Ms. Cvancara's statements to another commander, who informed Sergeant Peter Wagoner.  Sergeant Wagoner and Ms. Calvin then met with Ms. Cvancara, who claimed she had discussed her concerns about Ms. Calvin's

2

policy changes only with Commander Haffner, did not know Ms. Calvin was politically connected, and had not discussed with anyone whether Ms. Calvin was working her real estate job while on county time. The next day, Ms. Cvancara submitted a written statement to Sergeant Wagoner in which she made the same claims. When Sergeant Wagoner met with Ms. Cvancara a few days later, she initially repeated that she had spoken only to Commander Haffner about the policy changes, but after Sergeant Wagoner said he knew that was not true and that he had gotten information from Investigator Porter, Ms. Cvancara admitted the truth.

Sergeant Wagoner prepared a written report finding that Ms. Cvancara had violated orders by not adhering to her chain of command when expressing concerns about the policy changes and had violated various WCSO policies and Weld County Code provisions concerning truthfulness, acceptance of responsibility, and insubordination. His report was passed up the chain of command to the Sheriff who, in light of Ms. Cvancara's disciplinary history, fired Ms. Cvancara for insubordination and lack of candor.[1]

In this lawsuit, Ms. Cvancara asserted a claim under 42 U.S.C. § 1983 that the Sheriff violated her First Amendment right to freedom of speech because he fired her for speaking out on a matter of public concern. The Sheriff moved for summary judgment, which the district court granted on the ground that Ms. Cvancara's speech

_____

[1] At the time, the Weld County Sheriff was John Cooke. Because Ms. Cvancara sued Sheriff Cooke in his official capacity only, he was replaced as the defendant in this action by the present Sheriff, Steve Reams. We will simply refer to the defendant as the Sheriff.

was not protected because it did involve a matter of public concern. In reaching that decision, the district court considered and granted in part the Sheriff's motion to strike portions of Ms. Cvancara's affidavit. However, the court also determined that its ruling on the motion to strike was "largely irrelevant" because, in responding to the Sheriff's statement of undisputed material facts, Ms. Cvancara had failed to follow the court's standards of practice concerning citation to supporting evidence and therefore had not properly presented any of the facts she had attested to in her affidavit. 3 Aplt. App. at 597.

Ms. Cvancara appeals, arguing the district court (1) misapplied the summary judgment standard, (2) erroneously concluded that her speech did not involve a matter of public concern, and (3) erred in striking or otherwise refusing to consider statements in her affidavit.

## II.   STANDARD OF REVIEW

"We review the district court's grant of summary judgment de novo, applying the same standards that the district court should have applied." *Fields v. City of Tulsa*, 753 F.3d 1000, 1008 (10th Cir. 2014) (internal quotation marks omitted). A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[W]e examine the record and all reasonable inferences that might be drawn from it in the light most favorable to the nonmoving party." *Fields*, 753 F.3d at 1009 (internal quotation marks omitted).

4

## III. DISCUSSION

### A. Application of summary judgment standard

In his motion for summary judgment, the Sheriff argued he was entitled to judgment as a matter of law because the undisputed evidence revealed that Ms. Cvancara could not establish the first and third prongs of the five-pronged "*Garcetti/Pickering*" test applicable to retaliation claims brought under the First Amendment's free-speech clause.[2] Those prongs are:

> (1) whether the speech was made pursuant to an employee's official duties; (2) whether the speech was on a matter of public concern; (3) whether the government's interests, as employer, in promoting the efficiency of the public service are sufficient to outweigh the plaintiff's free speech interests; (4) whether the protected speech was a motivating factor in the adverse employment action; and (5) whether the defendant would have reached the same employment decision in the absence of the protected conduct.

*Dixon v. Kirkpatrick*, 553 F.3d 1294, 1302 (10th Cir. 2009). The district court rejected the Sheriff's arguments on the first and third prongs and instead granted summary judgment based on the second prong—that Ms. Cvancara's speech was not "on a matter of public concern." Ms. Cvancara claims that in considering and deciding her case based on a prong the Sheriff did not raise, the district court improperly relieved him of his initial burden to demonstrate an absence of any genuine issue of material fact and impermissibly shifted the burden to Ms. Cvancara to prove there were no genuinely disputed issues of material fact as to the public-concern prong.

---

[2] The test draws its name from *Garcetti v. Ceballos*, 547 U.S. 410 (2006), and *Pickering v. Board of Education*, 391 U.S. 563 (1968).

5

We are not persuaded. Generally, a party moving for summary judgment is charged with telling the district court the basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). But in *Johnson v. Weld County*, 594 F.3d 1202, 1214 (10th Cir. 2010), we approved a grant of summary judgment on a claim not raised in a defendant's opening summary-judgment brief where the plaintiff "marshaled and outlined the evidence supporting her claim" in her response brief, there was no indication the plaintiff was prevented "from offering additional evidence or argument to defend her claim," and the plaintiff did not identify on appeal any "way in which she was prejudiced by the district court's chosen procedural course."

Similarly here, the district court took up the public-concern issue only after Ms. Cvancara argued in her summary-judgment response brief that her speech was on a matter of public concern and pointed to evidence she claimed "established that her speech [was] of public concern." 2 Aplt. App. at 188. In his summary-judgment reply brief, the Sheriff addressed the issue, arguing that there were no genuinely disputed issues of material fact in the evidence properly before the court, and that such evidence was insufficient for Ms. Cvancara to survive summary judgment. Accordingly, the public-concern prong, which was a legal one for the court to decide, *see Dixon*, 553 F.3d at 1302, was sufficiently developed for the court's consideration, and Ms. Cvancara has not complained that the manner in which the issue came to the court's attention prevented her from presenting evidence.

6

Ms. Cvancara characterizes the court's conclusion that she "failed to establish" the public-concern prong of the *Garcetti/Pickering* test, 3 Aplt. App. at 609, as an improper requirement that she prove that prong. We disagree. The court's use of the phrase "failed to establish" may have been imprecise as a matter of summary-judgment standards, but the court determined the evidence before it was insufficient to support the public-concern prong. This was permissible because the public-concern prong is an element of Ms. Cvancara's claim and one on which she was to bear the ultimate burden of persuasion at trial. *See Trant v. Oklahoma*, 754 F.3d 1158, 1166-67 (10th Cir. 2014) (noting that a plaintiff bears the burden of proof on the first four *Garcetti/Pickering* prongs); *Montes v. Vail Clinic, Inc.*, 497 F.3d 1160, 1163 (10th Cir. 2007) ("Summary judgment follows when a moving party points to the absence of factual support on an element essential to the non-movant's case, and on which the non-movant bears the burden of proof at trial.").

In sum we see no unfair prejudice flowing from the district court's decision to consider the issue even though the Sheriff did not raise it first. Whether the district court erred in determining there were no genuinely disputed issues of material fact and in concluding that Ms. Cvancara's speech was not on a matter of public concern are separate questions we proceed to address.

7

**B. Ruling that speech was not on a matter of public concern**

The district court determined that although "at first glance" Ms. Cvancara's speech to Investigator Porter[3] appeared to be on a matter of public concern because she spoke out about potential impropriety, a closer look at Ms. Cvancara's statements about Ms. Calvin's alleged work as a real estate agent while on county time led to the opposite conclusion. 3 Aplt. App. at 607. We agree.

"Speech is on a matter of public concern if it involves a matter of interest to the community." *Nixon v. City & Cty. of Denver*, 784 F.3d 1364, 1367 (10th Cir. 2015). "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Connick v. Myers*, 461 U.S. 138, 147–48 (1983). "We consider the motive of the speaker and whether the speech is calculated to disclose misconduct or

---

[3] The district court confined its analysis to what Ms. Cvancara said to Investigator Porter because she did not rely on what she may have told Commander Haffner concerning Ms. Calvin's alleged real estate activities. As noted earlier, what she may have told Commander Haffner is unclear from the record. Indeed, on appeal, Ms. Cvancara points only to a bare, undisputed fact that she spoke with Commander Haffner, and a line of questioning at her deposition where the Sheriff's attorney inquired why she took her concern about Ms. Calvin's alleged real estate activity to Investigator Porter and Commander Haffner despite the fact that she had no personal knowledge informing that concern and had previously been warned about spreading rumors. The undisputed fact says nothing about the content of that conversation, and the Sheriff's attorney's line of questioning cannot be taken as evidence that Ms. Cvancara spoke to Commander Haffner about Ms. Calvin's real estate activities. The only other references to that conversation indicate that it concerned only the policy changes Ms. Calvin had instituted, and Ms. Cvancara has never argued that her speech on those changes is protected. But even if she spoke with Commander Haffner about her concerns that Ms. Calvin was working as a realtor on county time, our analysis of the public-concern prong would be the same.

8

merely deals with personal disputes and grievances unrelated to the public's interest." *Nixon*, 784 F.3d at 1367 (internal quotation marks omitted). "In particular, speech that exposes official impropriety generally involves matters of public concern, while speech that simply airs grievances of a purely personal nature typically does not." *Id.* at 1367–68 (internal quotation marks omitted).

Further, "[s]peech involves a public concern when the speaker intends to bring to light actual or potential wrongdoing or breach of public trust by a public official or to disclose any evidence of corruption, impropriety, or other malfeasance within a governmental entity." *Eisenhour v. Weber Cty.*, 744 F.3d 1220, 1228 (10th Cir. 2014) (brackets and internal quotation marks omitted). However, "[i]t is not sufficient that the topic of the speech be of general interest to the public; in addition, *what is actually said* must meet the public concern threshold." *Nixon*, 784 F.3d at 1368 (emphasis added) (internal quotation marks omitted).

Here, the district court noted there was limited evidence properly before the court of what Ms. Cvancara actually said to Investigator Porter because the only evidence Ms. Cvancara presented consisted of some general facts about her conversation with Investigator Porter, and the court declined to consider those facts because of Ms. Cvancara's failure to follow the court's practice standard regarding accurate citation. The court instead looked at what Investigator Porter described in a written statement he submitted to his commander, which was simply that Ms. Cvancara "believed [Ms. Calvin was] working a real estate job while working on

9

the WCSO clock," 1 Aplt. App. at 140. The court noted that this provided no explanation for Ms. Cvancara's belief and no evidence of her motive.

But the court then considered, apparently in the alternative, facts it had said it would not consider because of deficiencies in Ms. Cvancara's affidavit and her failure to follow the court's practice standards concerning citation to the record. Among those were that (1) soon after being hired, Ms. Calvin sent an email to other victim advocates explaining she was also a realtor and providing a personal email address; and (2) Ms. Cvancara said she had found Ms. Calvin's real estate business card in one of the county vehicles used by victim advocates and a camera containing photos of a house that she thought were of the type a realtor might take in another county vehicle, also used by victim advocates.[4] The court concluded that even if Ms. Cvancara had described these things to Investigator Porter, they would not be of interest or concern to the public. Although the email was not presented to the court, the court gleaned from the Sheriff's deposition testimony that Ms. Calvin sent the email to introduce herself to co-workers, and Ms. Cvancara admitted she did not know who placed the business card in the car or who owned the camera, and that she had no direct evidence that Ms. Calvin was working as a realtor on county time.

---

[4] The district court also addressed other evidence Ms. Cvancara pointed to in support of her contention that Ms. Calvin was impermissibly attending to her realtor job while on county time, including (1) the fact that there was no investigation of Ms. Calvin and (2) the testimony of a volunteer victim advocate that Ms. Calvin had asked her to cover her responsibilities so she could attend a real estate meeting. The court discounted this evidence because it was undisputed that Ms. Cvancara was not aware of these facts at the time she spoke with Investigator Porter. We agree and need not discuss those facts further.

*See Lee v. Nicholl*, 197 F.3d 1291, 1295 (10th Cir. 1999) (explaining that "speech must sufficiently inform the issue as to be helpful to the public in evaluating the conduct of the government" (internal quotation marks omitted)). The court further reasoned that the form and context of Ms. Calvin's conversation with Investigator Porter—an informal conversation between co-workers—supported the conclusion that Ms. Cvancara was not motivated by broader public purposes but was instead airing grievances.[5]

We agree with the district court's conclusion that Ms. Cvancara's speech was not on a matter of public concern. Based on the Sheriff's description of Ms. Calvin's introductory email, which he looked at while being deposed, no reasonable inference can be drawn that Ms. Calvin used her county email account to solicit real estate business. Hence, even crediting Ms. Cvancara's testimony that she had heard about the email at the time she spoke with Investigator Porter, her statements to Investigator Porter amounted to speculation based on a few weak bits of circumstantial evidence (the business card and camera) that Ms. Calvin was attending to her real estate job on county time. And further crediting Ms. Cvancara's contention that her motive was to expose potential misconduct, malfeasance, or

---

[5] In support of its reasoning on form and context, the district court cited *Thayer v. City of Holton*, 515 F. Supp. 2d 1198 (D. Kan. 2007), for its statement that a "relatively private and informal setting and limited audience . . . are factors suggesting that the comments were not matters of public concern," *id.* at 1207. However, we had earlier rejected the notion "that failure to speak publicly indicates speech was not made on a matter of public concerns." *Lee*, 197 F.3d at 1295. In light of our ensuing analysis in this case, however, we need not determine whether the district court erred in its form-and-context analysis.

11

corruption, motive alone is insufficient to turn speech into a matter of public concern where the content of the speech is speculation based on weak evidence. This is because "[t]he interest at stake is as much the public's interest in receiving *informed* opinion as it is the employee's own right to disseminate it." *City of San Diego v. Roe*, 543 U.S. 77, 82 (2004) (per curiam) (emphasis added). Ms. Cvancara's suspicions about Ms. Calvin were not sufficiently informed to be of public concern.

### C.  Treatment of Ms. Cvancara's evidence

Ms. Cvancara takes issue with the district court's decision to strike three paragraphs from her affidavit and to otherwise not consider evidence she presented without adhering to the court's practice standard concerning accurate citation. However, as we have seen, the district court ultimately considered that evidence and concluded (correctly, in our view) that the evidence did not alter its conclusion that Ms. Cvancara's statements to Investigator Porter did not touch on a matter of public concern. Accordingly, we see no need to address the issue.

## IV.  CONCLUSION

The judgment of the district court is affirmed.

Entered for the Court


Paul J. Kelly, Jr.
Circuit Judge

12