**FILED**
**United States Court of Appeals**
**Tenth Circuit**

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

**September 18, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

_____

RUSSELL MARSHALL BOLES,

    Plaintiff - Appellant,

v.

COLORADO DEPARTMENT OF
CORRECTIONS; CHARLENE
CROCKET; KRISTY HOLJENIN;
MAJOR JASON ZWIRN; RABBI
YISROEL ROSSKAMM; KENNETH
PHIPPS; CYRUS CLARKSON; IAN
BARNS; MARC TAYLOR; MATTHEW
POWELL; DERRICK ROBERTS;
BRYAN REICHERT, M.D.; GARY
WARD; REIDER MAY; NICOLE
WILSON; JESSICA DORCEY; DAVID
CUSTER; SUSAN FULLER; SHAWNA
NYGAARD; DEBRA GOHEEN; GTL,

    Defendants - Appellees.

No. 24-1444
(D.C. No. 1:19-CV-01158-RMR-STV)
(D. Colo.)

_____

## ORDER AND JUDGMENT[*]

_____

Before **HARTZ**, **BALDOCK**, and **PHILLIPS**, Circuit Judges.

_____

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Plaintiff Russell Boles, a Colorado state prisoner appearing pro se, filed suit against the Colorado Department of Corrections (CDOC), various CDOC employees, and one CDOC consultant, challenging various conditions of confinement. The district court dismissed most of the claims and granted summary judgment in favor of defendants on the remaining claims. Mr. Boles now appeals. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we affirm the judgment of the district court.

I

Mr. Boles is an inmate in the custody of CDOC. From approximately January 2017 through September 2023, Mr. Boles was housed at CDOC's Sterling Correctional Facility (SCF). In September 2023, Mr. Boles was moved from SCF to CDOC's Centennial Correctional Facility (CCF). In October 2023, Mr. Boles was moved from CCF to CDOC's Limon Correctional Facility (LCF).

Mr. Boles initiated this action in April 2019 while confined at SCF. He twice amended his complaint. The second amended complaint, filed in May 2020, asserted six general claims for relief: (1) the denial of adequate food; (2) the denial of adequate medical care; (3) discrimination on the basis of a disability; (4) discrimination on the basis of religion; (5) the illegal taking of money from Mr. Boles's inmate account and property from his cell; and (6) interference with Mr. Boles's access to the law library and legal research resources.

On the defendants' motions, the district court dismissed much of the second amended complaint for failure to state a claim upon which relief could be granted, leaving only claims alleging that (1) CDOC failed to accommodate Mr. Boles's need

2

for a wheelchair accessible cell, in violation of the Americans with Disabilities Act and the Rehabilitation Act; (2) CDOC and Food/Laundry Services Administrator Charleen Crockett failed to provide Mr. Boles an adequate kosher diet, in violation of the Religious Land Use and Institutionalized Persons Act (RLUIPA); (3) CDOC, Ms. Crockett, and Rabbi Yisroel Rosskamm, a consultant to CDOC, failed to provide Mr. Boles an adequate kosher diet, in violation of the First Amendment; and (4) Ms. Crockett and Food Service Manager Cyrus Clarkson denied Mr. Boles kosher meals from June through December 2019, including kosher meals for the Sukkot holiday, in violation of the First Amendment.

The defendants moved for summary judgment on the remaining claims. The magistrate judge recommended granting the motions in their entirety. The district court adopted the recommendation, granted summary judgment in favor of defendants on the remaining claims, and entered final judgment in the case.

Mr. Boles now appeals.

## II

We turn first to the district court's order granting in part the defendants' Rule 12(b)(6) motions to dismiss for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). Typically, "[w]e review the district court's grant of a Rule 12(b)(6) motion to dismiss de novo," and "can affirm . . . on any ground sufficiently supported by the record." *Gaddy v. Corp. of the President of the Church of Jesus Christ of Latter-Day Saints*, – F.4th –, 2025 WL 2447757 at *3 (10th Cir. Aug. 26, 2025).

3

The problem here, however, is that Mr. Boles's opening appellate brief does not specifically mention, let alone challenge, the district court's order granting in part the motions to dismiss. To be sure, Mr. Boles's brief repeats many of the allegations from the second amended complaint that were dismissed by the district court. But Mr. Boles offers no specific challenges to the district court's reasons for dismissing those claims and thus fails "to explain to us why the district court's decision was wrong." *Nixon v. City & Cnty. of Denver*, 784 F.3d 1364, 1366 (10th Cir. 2015). Further, although Mr. Boles discusses what he views as "pervasive systemic violations and interference with absolute substantive and fundamental rights," Aplt. Br. at 3, those allegations "cannot substitute for legal argument." *Nixon*, 784 F.3d at 1366; *see Meek v. Martin*, 74 F.4th 1223, 1276 (10th Cir. 2023) ("presenting the exact same argument that the district court rejected, without more, falls short of explaining to us why the district court's decision was wrong" (brackets, italics, and internal quotation marks omitted)). Thus, we conclude Mr. Boles has waived any challenge to the district court's decision granting in part the defendants' motions to dismiss.[1] *See Sawyers v. Norton*, 962 F.3d 1270, 1286 (10th Cir. 2020) ("Issues not raised in the opening brief are deemed abandoned or waived . . . [as are] arguments that are inadequately presented . . . ." (internal quotation marks omitted)).

---

[1] Even if we were to conclude that Mr. Boles adequately developed the issue in his opening brief, we would nonetheless affirm the district court's order granting in part the defendants' motions to dismiss. In short, we agree with the district court's conclusion that most of the allegations in the second amended complaint were insufficient to state viable constitutional claims against the named defendants.

III

That leaves the district court's order granting summary judgment in favor of defendants on the remaining claims. "We review the district court's order granting summary judgment de novo." *Scott v. Nationwide Agribusiness Ins. Co.*, 141 F.4th 1151, 1153 (10th Cir. 2025). "Summary judgment is appropriate where 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(a)).

A. *Wheelchair accessible cell*

We begin with Mr. Boles's claims that pertain to the alleged denial of a wheelchair accessible cell.

1. *Undisputed facts*

In late 2018, while he was housed in a double cell at SCF, Mr. Boles was provided with a wheelchair for his personal use. In March 2020, he was moved to a single cell at SCF due to the Covid-19 epidemic. He remained in that single cell for over a year.

In March 2021, Mr. Boles sent a request to the SCF medical department requesting to be evaluated for a wheelchair accessible cell. The medical department scheduled him for an appointment on April 20, 2021, but he did not show for that appointment.

On May 18, 2021, Mr. Boles filed his first grievance regarding lack of access to a wheelchair accessible cell. On July 11, 2021, he was moved to an "ADA cell,"

5

which was wheelchair accessible.  R. vol. III at 699 (internal quotation marks omitted).

Mr. Boles met with Dr. Jerome Long on July 23, 2021.  Dr. Long noted that Mr. Boles "ha[d] limited mobility due to lumbar dysfunction" and "need[ed] a cell with handrails and . . . a higher toilet."  *Id.* (internal quotation marks omitted). Dr. Long also noted in SCF's medical records that if the only cell that met those requirements was an ADA cell, then he recommended that cell.

Mr. Boles remained in an ADA cell between July 11, 2021 and April 2023.  In April 2023, he was moved to restrictive housing for fifteen days after punching a guard in the stomach.  Immediately after being released from restrictive housing, he was placed back in an ADA cell.

Mr. Boles was confined in an ADA cell during his period of incarceration at CCF, and is currently confined in an ADA cell at LCF.

2.  *The district court's summary judgment ruling*

Mr. Boles alleged in his second amended complaint that CDOC's ADA cells are not wheelchair accessible and that CDOC violated his rights under the Americans with Disabilities Act (ADA) and the Rehabilitation Act (RA) by failing to accommodate his need for a wheelchair accessible cell.

The district court concluded CDOC was entitled to summary judgment with respect to these claims because Mr. Boles failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a). Although Mr. Boles cited to various grievances that he filed at SCF requesting

varying accommodations, the district court concluded that none of those grievances mentioned the need for a wheelchair accessible cell. And, although Mr. Boles argued he was not required to exhaust his administrative remedies because "there [was] no apparent remedy" or it was "disputable" whether a remedy was available, the district court rejected those arguments. *Id.* at 711–12. The district court therefore dismissed Mr. Boles's ADA and RA claims without prejudice.

    3. *Mr. Boles's appeal*

    In his opening appellate brief, Mr. Boles discusses his need for a wheelchair accessible cell, generally asserts "that all of the original claims were grieved multiple times," and then asserts that CDOC's grievance officers "had no authority to change" CDOC "regulations and policy." Aplt. Br. at 31.

    Mr. Boles does not point to any evidence in the record that would allow us to conclude he exhausted his administrative remedies with respect to his ADA and RA claims, and our own independent review of the record reveals none. To the extent Mr. Boles is arguing that exhausting the administrative remedies offered by CDOC would have been futile, we reject it as contrary to the PLRA and Tenth Circuit law. The PLRA requires that "available" administrative remedies be exhausted prior to filing an action with respect to prison conditions under 42 U.S.C. § 1983 or any other federal law, including the ADA and RA. 42 U.S.C. § 1997e(a). And we have held that "[e]ven where the 'available' remedies would appear to be futile at providing the kind of remedy sought, the prisoner must exhaust the administrative remedies available." *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002).

We therefore affirm the district court's grant of summary judgment in favor of CDOC on these claims.

## B. Kosher diet

The remainder of Mr. Boles's claims center around CDOC's kosher diet.

### 1. Undisputed facts

Mr. Boles actively practices Orthodox Judaism, including following a kosher diet. CDOC provides a kosher diet for those inmates who request one and sign a religious diet participant agreement. Mr. Boles has been enrolled in CDOC's kosher diet since he began his term of incarceration in 2016.

CDOC's kosher diet is reviewed by dietitians on an annual basis. That review includes assessing whether the diet complies with kosher rules and provides nutritional food to inmates. According to a computer analysis conducted by a CDOC dietitian, CDOC's kosher diet is considered nutritionally adequate because, at a minimum, it is within 66% of the recommended daily values.

During Boles's incarceration at SCF, CDOC contracted with Scroll K Vaad Hakashrus of Denver (Scroll K) to provide advice on Jewish dietary laws. Rabbi Rosskamm is an employee of Scroll K who consulted with CDOC as an expert in Jewish dietary restrictions. According to Rabbi Rosskamm, most of the kosher food served at SCF is purchased already prepared and ready to be served. Any kosher food that is actually prepared at SCF is done so in a designated room that meets Scroll K guidelines. Although Rabbi Rosskamm has visited SCF in connection with Scroll K's consulting services, he does not oversee the preparation of kosher

meals at SCF or supervise.  In his opinion, the kosher meals served at SCF conform to Scroll K's standards and are kosher.  To the extent Mr. Boles disagrees, it is Rabbi Rosskamm's opinion that Mr. Boles's interpretation of Jewish dietary law is incorrect.

In August 2017, Mr. Boles began receiving a "medical diet," which was a low-sodium kosher diet.  R. vol. III at 697.

In June 2019, Mr. Boles wrote a letter to Charleen Crockett, who serves as the head administrator over CDOC's food service operations, asking her to "go ahead and cancel this horrible diet."  *Id.* at 217 (internal quotation marks omitted).  The following month, Mr. Boles filed a grievance stating he "neither asked for nor do I want any special diet."  *Id.* (internal quotation marks omitted).

Between June 2019 and October 2019, Mr. Boles did not file any grievances asking for his kosher diet to be reinstated.

In October 2019, Mr. Boles filed a new grievance stating he did not receive kosher meals for the holiday of Sukkot.  He did not, however, request his kosher diet to be reinstated on a full-time basis.  The grievance coordinator responded that Mr. Boles was informed "prior to the holidays both verbally and in writing, and it was understood [he] would not receive special meals for the religious holidays."  *Id.* at 217 (internal quotation marks omitted).  There is no evidence that Mr. Boles appealed from that response.

Ms. Crockett reinstated Mr. Boles's kosher diet on October 10, 2019, and he began receiving kosher meals in November 2019.

9

2. *The district court's summary judgment ruling*

Mr. Boles alleged in his second amended complaint that: (a) CDOC and Ms. Crockett failed to provide him with an actual kosher diet, and a kosher diet that was nutritionally adequate, in violation of the RLUIPA; (b) CDOC, Ms. Crockett, and Rabbi Rosskamm failed to provide him with an actual kosher diet, and a kosher diet that was nutritionally adequate, in violation of the First Amendment; and (c) Ms. Crockett and Mr. Clarkson denied him kosher meals from June through December 2019, including kosher meals for the Sukkot holiday, in violation of the First Amendment.

The district court concluded as an initial matter that there was no evidence Rabbi Rosskamm was a state actor. *See generally VDARE Found. v. City of Colo. Springs*, 11 F.4th 1151, 1160 (10th Cir. 2021) (noting the four tests "delineated by the Supreme Court to determine whether private parties should be deemed state actors when conducting a state action analysis"). The district court therefore granted summary judgment in favor of Rabbi Rosskamm.

The district court concluded CDOC and Ms. Crockett were entitled to summary judgment as to Mr. Boles's RLUIPA and First Amendment claims. With respect to Mr. Boles's assertion "that his food was not properly prepared to meet kosher standards," the district court concluded he did "not adequately allege specific dates or instances." R. vol. III at 732. Although Mr. Boles cited to several grievances he filed regarding the kosher diet, the district court concluded those grievances contained "the same conclusory allegations without specific supporting

facts." *Id.* at 733.  Ultimately, the district court concluded that Mr. Boles failed to demonstrate a genuine issue of material fact regarding whether the diet he was provided was actually kosher.

As for Mr. Boles's assertion that CDOC's kosher diet was nutritionally inadequate and thus forced him to choose between practicing his religion and eating a healthy diet, the district court concluded, as an initial matter, "that being served, on occasion, rotten produce, and/or being served a monotonous diet" did not constitute a substantial burden on Mr. Boles's First Amendment rights to exercise his religion. *Id.* at 728–29 (citing *Strope v. Cummings*, 381 F. App'x 878, 880–82 (10th Cir. 2010)).  The district court in turn noted that defendants submitted a declaration from a CDOC dietitian who analyzed CDOC's "master menu, recipes and specialized menus for compliance with nutritional standards" and determined that CDOC's kosher diet "offer[ed] a variety of foods" and was "nutritionally adequate." *Id.* at 729 (internal quotation marks omitted).  The district court further noted that Mr. Boles offered no "direct evidence that the kosher food [was] nutritionally inadequate" and instead "relie[d] on conclusory assertions" in an attempt to rebut the dietitian's declaration. *Id.*  The district court also noted that the grievances Mr. Boles filed complaining about the kosher diet were conclusory in nature and lacked "specific supporting facts." *Id.* at 730.  Ultimately, the district court concluded that Mr. Boles's "allegations of nutritionally inadequate food [were] merely general averments stating conclusory allegations that [were] insufficient to withstand Defendants' motion for summary judgment." *Id.*

11

Finally, the district court concluded Mr. Boles failed to "carr[y] his burden of showing that a genuine factual dispute exist[ed] as to whether he exhausted his administrative remedies" as to his First Amendment claim concerning the alleged denial of a kosher diet between June 2019 and December 2019. *Id.* at 714. The district court therefore granted summary judgment in favor of defendants on this claim and dismissed the claim without prejudice.

*3. Mr. Boles's appeal*

Mr. Boles discusses his diet in his opening appellate brief, but in doing so simply repeats some of the same general allegations he made in the district court. For example, he asserts that "his diet . . . is next to nothing," "[t]hey have gradually reduced fresh produce to the point it is either non-exist[e]nt, rotten, or defiled," and "[e]verything else in the diet is so overprocessed and such poor quality it is virtually poison." Aplt. Br. at 8. Otherwise, Mr. Boles makes no mention of the diet-related claims he asserted under RLUIPA and the First Amendment. And, most importantly, Mr. Boles does not acknowledge, let alone challenge, the conclusions reached by the district court in granting summary judgment in favor of defendants on these claims. We therefore conclude he has waived any challenge to the district court's decision. *See Sawyers*, 962 F.3d at 1286.

IV

That leaves one final matter. After filing his notice of appeal, Mr. Boles filed a motion for leave to proceed without prepayment of costs and fees. But Mr. Boles "has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal" in federal court "that was dismissed on the grounds that it [was] frivolous, malicious, or fail[ed] to state a claim upon which relief [could] be granted." 28 U.S.C. § 1915(g). As a result, Mr. Boles is generally prohibited from commencing an appeal without prepayment of costs and fees. *See id.*

Soon after Mr. Boles filed his notice of appeal, the clerk's office issued an order directing him to show cause why he should not be required to prepay the full filing fee. He filed a response asserting he was "under imminent danger of serious physical injury," *id.*, due to the lack of adequate medical care and a kosher diet. The clerk's office then referred the matter to us.

Because Mr. Boles has failed to establish the district court erred in disposing of his claims regarding lack of adequate medical care and a kosher diet, we conclude Mr. Boles has likewise failed to satisfy § 1915(g)'s imminent-danger exception. We therefore deny his motion for leave to proceed without prepayment of costs and fees.

13

V

We affirm the judgment of the district court and deny Mr. Boles's motion for leave to proceed without prepayment of costs and fees.  We also deny Mr. Boles's motion to incorporate extraneous documents into his reply brief.

Entered for the Court


Gregory A. Phillips
Circuit Judge