**FILED**
**United States Court of Appeals**
**Tenth Circuit**

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

**August 8, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

_____

RAMALLE MEADOWS,

    Plaintiff - Appellant,

v.

THE CITY OF THE VILLAGE,
OKLAHOMA; LT. RYAN JACOBSON,
in his individual capacity as City of the
Village Police Officer; CPL. MARK
SWARTZBAUGH, in his individual
capacity as City of the Village Police
Officer,

    Defendants - Appellees.

No. 21-6148
(D.C. No. 5:20-CV-00530-C)
(W.D. Okla.)

_____

## ORDER AND JUDGMENT[*]

_____

Before **TYMKOVICH**, Chief Judge, **MATHESON** and **EID**, Circuit Judges.

_____

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Ramalle Meadows, proceeding pro se,[1] appeals the district court's entry of summary judgment in favor of defendants Ryan Jacobson, Mark Swartzbaugh, and City of the Village, Oklahoma.  Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.  BACKGROUND

City of the Village Police Officer Jacobson, on patrol in January 2020, "heard what sounded like a grinding noise and turned [his] attention to a pick-up truck that was backing into a parking spot . . . just inches away from a Mercedes."  R., vol. II at 51.  He walked over to see if the pickup had caused any property damage.  He encountered Mr. Meadows behind the wheel of the pickup.  Through his open driver's side window, Mr. Meadows told Officer Jacobson he did not strike the Mercedes.  Mr. Meadows then rolled up his window.

To prevent Mr. Meadows from fleeing, Officer Swartzbaugh drove his police cruiser in front of Mr. Meadows's pickup.  Mr. Meadows then got out and put his hands in his front pockets.  Officer Jacobson commanded him to take his hands out of his pockets and to face the truck to be searched for weapons.  Mr. Meadows pulled his hands out of his pockets but questioned why officers needed to search him because he "hadn't done anything wrong."  *Id.* at 56 (quotations omitted).  Officer Jacobson repeated his search command and briefly touched Mr. Meadows's elbow as

---

[1] Because Mr. Meadows proceeds pro se, we construe his filings liberally but do not serve as his advocate.  *See Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).

he attempted to execute a search. Mr. Meadows "jerked [his] arm away and . . . said, 'Don't touch me.'" *Id.*

Officer Jacobson complied with this request and abandoned the search. He then asked another officer to inspect the vehicles for damage. Finding none, the officers left. The entire encounter lasted about two minutes and fifteen seconds.

Mr. Meadows sued under 42 U.S.C. § 1983, asserting the officers violated his Fourth and Fourteenth Amendment rights by conducting an unlawful investigatory detention and falsely arresting him. He sued the city for these alleged violations under a failure to train or supervise theory. Mr. Meadows also brought state-law false arrest, unreasonable seizure, and excessive force claims.

The district court granted summary judgment to the defendants on all claims. It said the investigatory detention passed constitutional muster under *Terry v. Ohio*, 392 U.S. 1 (1968), and its progeny. And it rejected Mr. Meadows's federal false arrest claims because it concluded the officers never arrested him. It granted summary judgment to the city on Mr. Meadows's § 1983 municipal liability claims because he failed to establish an underlying constitutional violation. The district court rejected Mr. Meadows's state-law false arrest claim, concluding that Oklahoma law barred him from asserting this claim against an individual officer and that Mr. Meadows did not bring the claim against the city. The court determined that Mr. Meadows's state-law unreasonable seizure and excessive force claims failed for the same reasons as his federal constitutional claims.

3

## II. **DISCUSSION**

### A. *Standard of Review*

"We review the grant of summary judgment de novo . . . ." *Est. of Beauford v. Mesa Cnty.*, 35 F.4th 1248, 1261 (10th Cir. 2022). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The summary judgment standard requires us to construe the facts in the light most favorable to the nonmovant and to draw all reasonable inferences in its favor." *Est. of Beauford*, 35 F.4th at 1261.

### B. *Legal Background*

The Fourth Amendment protects individuals from "unreasonable searches and seizures." U.S. Const. amend. IV. It "is not, of course, a guarantee against *all* searches and seizures, but only against *unreasonable* searches and seizures." *United States v. Sharpe*, 470 U.S. 675, 682 (1985). It "applies against state law enforcement officials as incorporated through the Due Process Clause of the Fourteenth Amendment." *Wilkins v. City of Tulsa*, 33 F.4th 1265, 1273 n.5 (10th Cir. 2022).

Under *Terry* and its progeny, officers may conduct an investigatory detention without violating a person's Fourth Amendment rights if they possess "a reasonable suspicion a person has or is committing a crime." *United States v. McHugh*, 639 F.3d 1250, 1255 (10th Cir. 2011) (quotations omitted). "In determining whether reasonable suspicion exists, we look to the totality of the circumstances, rather than assessing each factor or piece of evidence in isolation." *Id.* at 1256 (quotations

omitted). "Additionally, we need not rule out the possibility of innocent conduct, and reasonable suspicion may exist even if it is more likely than not that the individual is not involved in any illegality." *Id.* (citation and quotations omitted). "Reasonable suspicion is not, and is not meant to be, an onerous standard." *Shaw v. Schulte*, 36 F.4th 1006, 1014 (10th Cir. 2022) (quotations omitted).

As part of a lawful *Terry* stop, officers are also "authorized to take such steps as [a]re reasonably necessary to protect their personal safety and to maintain the status quo during the course of the stop." *United States v. Hensley*, 469 U.S. 221, 235 (1985). "In determining whether the precautionary measures were reasonable, the standard is objective—would the facts available to the officer at the moment of the seizure warrant a man of reasonable caution [to believe] that the action taken was appropriate." *Gallegos v. City of Colo. Springs*, 114 F.3d 1024, 1030–31 (10th Cir. 1997) (ellipsis and quotations omitted).

"An investigative detention evolves into an arrest when the scope of police conduct is no longer reasonably related to the circumstances initially justifying the seizure." *Manzanares v. Higdon*, 575 F.3d 1135, 1148 (10th Cir. 2009). "Although there is no rigid time limit on an investigative detention, it is clear that the brevity of the invasion of the individual's Fourth Amendment interests is an important factor in determining whether the seizure is so minimally intrusive as to be justifiable on reasonable suspicion." *Id.* (quotations omitted).

C. *Analysis*

1. **Federal Claims**

   a. *Investigatory detention*

Mr. Meadows argues the officers lacked reasonable suspicion to detain him because the loud grinding noise they heard permitted only a mere "hunch" the car had been hit. *See Shaw*, 36 F.4th at 1014 ("For reasonable suspicion to exist, an officer must articulate something more than an inchoate and unparticularized suspicion or hunch." (quotations omitted)). But "when determining if a detention is supported by reasonable suspicion, we defer to the ability of a trained law enforcement officer to distinguish between innocent and suspicious actions." *McHugh*, 639 F.3d at 1256 (quotations omitted). "We judge the officer's conduct in light of common sense and ordinary human experience, and we consider the reasonableness of an officer's actions using an objective standard." *Id.* (citation and quotations omitted). Applying these standards, we conclude that when the officers heard a loud grinding noise and saw a truck backing in very close to a parked car, they reasonably suspected the truck had hit the car.

Mr. Meadows next argues the officers lacked reasonable suspicion because hitting a parked car is not a crime under Oklahoma law unless the driver leaves the scene without providing insurance information to the owner of the parked car. When the officers detained him, he had not left the scene. This argument overlooks the precept that "reasonable suspicion may exist even if it is more likely than not that the individual is not involved in any illegality." *McHugh*, 639 F.3d at 1256 (quotations

6

omitted).  Under the totality of the circumstances, the officers had a reasonable suspicion that Mr. Meadows might be in the process of committing a crime by leaving the scene of an accident.

Mr. Meadows further argues that even if the officers initially had reasonable suspicion to detain him, their suspicions were no longer reasonable after he told them he did not hit the Mercedes.  But this argument ignores that officers may temporarily detain a person "to effectuate the purpose of either dispelling or confirming the officer's reasonable suspicion."  *United States v. Morales*, 961 F.3d 1086, 1091 (10th Cir. 2020) (quotations omitted).  Here, the officers acted reasonably in taking a short time to verify Mr. Meadows's statement that he did not hit the car.

Mr. Meadows also asserts Officer Jacobson exceeded a permissible *Terry* stop by "grabbing [him] by his elbow forcing him to turn around and face his truck." Aplt. Opening Br. at 15.  The video evidence refutes this assertion.  *See Est. of Beauford*, 35 F.4th at 1261 ("We do not have to accept versions of the facts contradicted by objective evidence, such as video surveillance footage.").  It instead confirms the district court's account:  "Defendant Jacobson . . . instructed [Mr. Meadows] to face his pickup and briefly touched [Mr. Meadows's] right elbow.  [Mr. Meadows] jerked his arm away and instructed Defendant Jacobson not to touch him." R., vol. II at 284.  Officer Jacobson's actions "maintain[ed] the status quo," *Hensley*, 469 U.S. at 235, and were objectively reasonable based on "the facts available to the officer," *Gallegos*, 114 F.3d at 1030–31 (quotations omitted).  We conclude his actions did not violate the Fourth Amendment.

7

b. *False arrest*

Mr. Meadows argues the officers violated the Fourth Amendment by arresting him without probable cause. The officers detained him for less than three minutes before letting him go. We agree with the district court that "the undisputed facts make clear that [Mr. Meadows] was detained for no longer than necessary to complete the investigation." R., vol. II at 287. We affirm summary judgment for the officers on the false arrest claim because they never arrested Mr. Meadows.

c. *Municipal claims*

Because Mr. Meadows did not establish any constitutional violation, his § 1983 failure-to-train claims against the city necessarily fail. *See Crowson v. Washington Cnty.*, 983 F.3d 1166, 1189–92 (10th Cir. 2020) ("[W]here the actions of a municipality's officers do not rise to the level of a constitutional violation and the claim against the municipality is based on it serving as the driving force behind those actions, liability cannot lie."), *cert. denied*, 142 S. Ct. 224 (2021).

2. **State-Law Claims**

a. *False arrest*

The district court rejected Mr. Meadows's state-law claims against the officers for false arrest. It said the Oklahoma Governmental Tort Claims Act (OGTCA), Okla. Stat. tit. 51, §§ 151–72, governs, and "the OGTCA does not permit a claim against individual employees for actions done in the course of their duties." R., vol. II at 288. The court also said Mr. Meadows's "Amended Complaint does not assert a false arrest claim against Defendant City of the Village." *Id.* On appeal, Mr.

Meadows fails to argue the district court erred in reaching these conclusions, so we affirm. *See Nixon v. City & Cnty. of Denver*, 784 F.3d 1364, 1369 (10th Cir. 2015) (affirming district court's decision where the "opening brief contain[ed] nary a word to challenge the basis of" that decision).

b. *Unreasonable seizure and excessive force*

Mr. Meadows alleged unreasonable seizure and excessive force against Officer Jacobson under Article 2, § 30 of the Oklahoma Constitution, which "is nearly identical to the Fourth Amendment to the United States Constitution." *Gomez v. State*, 168 P.3d 1139, 1142 n.4 (Okla. Crim. App. 2007). The district court rejected this claim because "the level of force used and/or the scope and length of any seizure was consistent with that permitted to perform a permissible *Terry* stop." R., vol. II at 289–90. Mr. Meadows does not argue the district court erred, so we affirm. *See Nixon*, 784 F.3d at 1369.

### III.  CONCLUSION

We affirm the district court's judgment.

Entered for the Court

Scott M. Matheson, Jr.
Circuit Judge

9